**Johnny YOUNGBLOOD and Carol Youngblood, Appellants,**

v.

**U.S. SILICA COMPANY, The Feldspar Corporation, and Unimin Corporation, Appellees.**

No. 06–03–00020–CV.

Court of Appeals of Texas, Texarkana.

Submitted Nov. 12, 2003.

Decided March 17, 2004.

---

Jason A. Gibson, Russell W. Endsley, Smith & Gibson, PC, Houston, for appellants.

Reid Wm. Martin, Sammons & Parker, PC, Tyler, for The Feldspar Corporation.

Michael C. Wright, David F. Johnson, Winstead, Sechrest & Minick, PC, Dallas, for Unimin Corporation.

N. Terry Adams Jr., Steven L. Russell, Beirne, Maynard & Parsons, LLP, Dallas, for U.S. Silica Corporation.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

We withdraw our opinion of December 18, 2003, overrule the appellees' motion for rehearing, and substitute the following opinion.

Near the end of his forty years of employment with Kilgore Ceramics,[1] Johnny

---

1. The business has also operated during this time under the name of Mansfield Plumbing, as well as Armitage & Shanks.

Youngblood developed respiratory problems. He eventually retired and learned his breathing difficulties were caused by the work-related illness, "silicosis."[2] Youngblood sued his former employer and a number of silica manufacturers for his injuries. Three of those defendants, U.S. Silica Company, The Feldspar Corporation, and Unimin Corporation (collectively "U.S. Silica"), successfully moved for summary judgment in the trial court, from which Youngblood now appeals.[3] We reverse the judgment.

*Standard of Review*

To prevail on a motion for summary judgment, the moving party must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). When reviewing the trial court's grant of a summary judgment, the appellate court must examine the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Nixon v. Mr. Prop. Mgmt., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). A trial court errs by granting a defendant's traditional motion for summary judgment if the defendant fails to demonstrate that at least one element of the plaintiff's case has been conclusively negated or fails to demonstrate that the defendant is entitled to judgment as a matter of law. *Amouri v. Southwest Toyota, Inc.,* 20 S.W.3d 165, 168 (Tex.App.-Texarkana 2000, pet. denied). "In deciding if the defendant has met its burden, we indulge every reasonable inference from the evidence and resolve all doubts in favor of the nonmovant." *Id.*

(citing *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984)); *see also Nixon,* 690 S.W.2d at 548–49.

 U.S. Silica moved for summary judgment based on Youngblood's alleged failure to file suit within the applicable statute of limitations. "A defendant who moves for summary judgment based upon limitations bears the burden of negating the discovery rule at the summary judgment stage." *Nugent v. Pilgrim's Pride Corp.,* 30 S.W.3d 562, 567 (Tex.App.-Texarkana 2000, pet. denied). The discovery rule is an exception to the statute of limitations. As this Court recently stated, the discovery rule

> defers the accrual of a cause of action until the plaintiff knew, or through the exercise of reasonable diligence should have known, of the facts giving rise to the cause of action. *Trinity River Auth. v. URS Consultants, Inc.,* 889 S.W.2d 259, 262 (Tex.1994); *Moreno,* 787 S.W.2d at 351. The discovery rule therefore delays the commencement of the limitations period when the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996); *Tanglewood Terrace, Ltd. v. City of Texarkana,* 996 S.W.2d 330, 337 (Tex.App.-Texarkana 1999, no pet.). These two elements of inherent undiscoverability and objective verifiability balance these conflicting policies in statutes of limitations: the benefits of precluding stale claims versus the risks of

**2.** Silicosis is a disease of the lungs "caused by long-term inhalation of silica dust. . . ." Webster's II New College Dictionary 1028 (2001). In medical terms, silicosis is "pneumoconiosis due to the inhalation of the dust of stone, sand, or flint containing silicon dioxide, with formation of generalized nodular fibrotic

changes in both lungs." Dorland's Illustrated Medical Dictionary 1527 (27th ed. 1988).

**3.** Youngblood subsequently nonsuited the remaining defendants that had not moved for summary judgment and which are, therefore, not relevant to this appeal.

precluding meritorious claims that happen to fall outside an arbitrarily set period. *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex.1996). An injury is inherently undiscoverable if it is the type of injury that is not generally discoverable by the exercise of reasonable diligence. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex.1998), *citing Altai*, 918 S.W.2d at 455. In order for an injury to be inherently undiscoverable, the injury need not be absolutely impossible to discover. *S.V.*, 933 S.W.2d at 7. The discovery of a particular injury depends on the circumstances of the injury and the plaintiff's diligence.

*Haas v. George*, 71 S.W.3d 904, 912 (Tex. App.-Texarkana 2002, no pet.). Regarding the discovery rule and the tolling of the statute of limitations in occupational disease cases, the Texas Supreme Court has also stated,

> a cause of action accrues whenever a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury *and* he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related.

*Childs v. Haussecker*, 974 S.W.2d 31, 33 (Tex.1998) (emphasis added).

### Background Facts

The evidence, viewed in the light most favorable to Youngblood, showed the following: Youngblood worked at Kilgore Ceramics from 1959 until his retirement in 1999. There was testimony from several sources that Youngblood worked around silica and that (for at least some portion of his employment) he worked in an area in which he was also exposed to asbestos. Youngblood testified he retired because he was no longer able to work due to breathing problems and a continuous cough that

was eventually accompanied by excessive phlegm production. According to Youngblood, it was not until December 1997 that he learned he had silicosis.

During his deposition, Youngblood acknowledged that Kilgore Ceramics required employees to have their chests x-rayed on being hired, and thereafter all employees were x-rayed every two or three years. The record before us shows Youngblood was x-rayed on a periodic basis consistent with this policy. Youngblood also admitted he began experiencing respiratory problems in the late 1980s, though he did not assume his condition was work related.

In a letter dated March 17, 1992, Allan Goldstein, M.D., the medical director of the organization that performed a chest x-ray test for Youngblood at his place of employment, informed Youngblood his x-ray results were such "that we recommend you consult your physician for further evaluations." The letter, however, did not suggest a medical diagnosis. As a result of Goldstein's letter, Youngblood went to see Gail Stockman, M.D., in Longview. At the time of his deposition in this case, Youngblood could not recall what Stockman told him regarding his tests at her office. Youngblood, however, denied being told by Stockman in 1992 that he had silicosis.

In 1997, doctors again thought Youngblood's employer-sponsored x-ray appeared abnormal. The company physician suggested Youngblood see his personal physician for further evaluation. That letter, like the one Youngblood received in 1992, did not suggest he had silicosis. According to Youngblood, he was not told he had silicosis and asbestosis until he later saw Peter Petroff, M.D., of Independent Medical Associates, a company hired at

that time by his employer to review its workers' x-ray results.

On August 28, 1998, Youngblood sued a number of defendants, including U.S. Silica, claiming each was liable for contributing to his contracting the disease conglomerate silicosis, a disease he claims resulted from his use of the defendants' products during his employment at Kilgore Ceramics. The trial court ultimately granted summary judgment in favor of U.S. Silica. On appeal, Youngblood contends genuine issues of material fact exist as to whether he knew, or should have known, more than two years before the date he filed the lawsuit that his injuries were work related.

*U.S. Silica's Contentions*

"Except as provided by Sections 16.010 and 16.0045, a person must bring suit for ... personal injury ... not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 2002). U.S. Silica alleged Youngblood either received his silicosis diagnosis in 1985 or 1992 or, alternatively, he should have known before 1996 that his respiratory problems were work related and that, by waiting until 1998 to file suit, Youngblood's cause of action was barred by the two-year statute of limitations.

In defense of the trial court's award of summary judgment, U.S. Silica contends a reasonable person with Youngblood's specific health problems (continuous coughing and shortness of breath), and in his line of work (being continuously exposed to silica), would have been on notice that he or she suffers from some injury and, using due diligence, would have either known, or should have reasonably concluded, that those symptoms were caused by work-related exposure to silica. Then, citing *Zacharie v. U.S. Natural Res., Inc.*, 94 S.W.3d 748, 753 (Tex.App.-San Antonio 2002, no pet.), U.S. Silica contends a singular, definitive, medical diagnosis is not required for the worker to be placed on notice of a work-related injury; "[a] differential diagnosis is sufficient." U.S. Silica then argues (1) Youngblood does not dispute he knew he had a lung disease before August 28, 1996; and (2) Youngblood should have concluded his lung disease was work related before August 28, 1996, because (a) Youngblood's employer had a policy of having employees receive chest x-rays on a regular basis, the clear purpose of which was to screen workers for occupational lung diseases, (b) Stockman's unobjected-to affidavit establishes she made a differential diagnosis of either silicosis or tuberculosis in 1992, (c) Randy Erwin, M.D., recommended entering a differential diagnosis of old tuberculosis or other granulomatous disease, including fungal disease, sarcoidosis, or silicosis on May 16, 1995, (d) Dale Fisher, M.D., had recommended entry of a differential diagnosis of silicosis, old tuberculosis, fungal disease, or sarcoidosis in 1998, and (e) Youngblood reportedly admitted to Andy Abril, M.D., in February 2001 that he had been diagnosed with silicosis about six or seven years earlier.

U.S. Silica also contends the affidavits submitted by Johnny and Carol Youngblood in response to its motion for summary judgment (and tendered before the summary judgment hearing) were substantively defective and therefore could not serve as evidence that may be considered in whether the trial court properly granted summary judgment. U.S. Silica further asserts that the Youngbloods' amended affidavits, though filed with leave of the trial court, were submitted well after the entry of summary judgment and therefore had no evidentiary effect.

*Youngblood's Contentions*

Youngblood counters by referencing his summary judgment affidavit in which he

stated (1) he neither knew, nor could have known, he had silicosis before December 1997 when he was notified by Petroff he had silicosis, and (2) he was never informed of Erwin's 1995 recommendation of a differential diagnosis that included silicosis, nor did he ever say to Abril that he had silicosis. Then, comparing his appeal with the case reviewed by the Texas Supreme Court in *Childs,* 974 S.W.2d 31, Youngblood contends the doctors' continual failure to diagnose his illness, when combined with Youngblood's own testimony denying knowledge of the work related injuries before 1997, presents more than a scintilla of evidence of a material fact, thereby precluding summary judgment.

Youngblood also asserts that the affidavits he submitted in response to U.S. Silica's motion for summary judgment may be considered in reviewing the trial court's decision. Youngblood contends U.S. Silica failed to obtain a ruling on its objections to the affidavits before or during the trial court's summary judgment hearing. Therefore, according to Youngblood, U.S. Silica waived its objections to those affidavits, thereby permitting our consideration of those affidavits as substantive evidence that precludes summary judgment.

*Analysis*

The relevant material fact at issue on appeal is whether Youngblood actually knew, or should have known before 1996, that his injuries were work related. If the answer to either question is "yes," then the trial court properly granted summary judgment. Only if the answer to both questions is "no" should we find the trial court abused its discretion.

### A. The Youngbloods' Affidavits

After U.S. Silica filed its motion for summary judgment, Youngblood filed a lengthy response. His response included affidavits from himself and his wife, Carol. On July 30, 2002, at 9:38 a.m., U.S. Silica filed nine pages of objections to the Youngbloods' affidavits.[4] At 11:05 a.m. that same day, the trial court granted U.S. Silica's motion for summary judgment. The trial court did not rule on U.S. Silica's objections to the Youngbloods' affidavits until August 7, 2002, when the trial court signed an order sustaining U.S. Silica's *objections on the basis that the affidavits did not affirmatively state that the facts contained therein were true and within the personal knowledge of each affiant.* The trial court, however, attempted to vacate this order October 15, 2002. Also on October 15, the trial court granted Youngblood's motion for leave to file amended affidavits. These amended affidavits of Johnny and Carol Youngblood are identical to the original affidavits, except that the amended affidavits were notarized July 30 and contain the additional paragraph, "The facts stated in this affidavit are true and correct and within my personnel [sic] knowledge."

Affidavits submitted to a trial court in opposition to a motion for summary judgment must be made on personal knowledge. Tex.R. Civ. P. 166a(f). In its brief to this Court, U.S. Silica cites *Landscape Design & Constr., Inc. v. Warren,* 566 S.W.2d 66, 67 (Tex.Civ.App.-Dallas 1978, no writ), for the proposition that an affidavit's failure to affirmatively state it is based on personal knowledge amounts to a defect of substance and, therefore, the

---

**4.** *Youngblood does not contest the timing of U.S. Silica's objections to the affidavits, nor does Youngblood claim the trial court erred by failing to give Youngblood an opportunity to file amended affidavits. Instead, Young-* blood relies on the contention that U.S. Silica waived any objection to the form of Youngblood's affidavits by failing to obtain a ruling on its objections before the trial court granted summary judgment.

Youngbloods' affidavits are legally insufficient to defeat U.S. Silica's motion for summary judgment.

■ In *Warren*, an attorney submitted an affidavit that was based on information he had garnered from the client rather than his own first-hand knowledge. *Id.* The court of appeals reversed the trial court's award of summary judgment because the attorney's affidavit did not recite facts from which his personal knowledge could be inferred. *Id.* Thus, *Warren* does not stand for the general proposition that all affidavits that fail to state affirmatively they are based on personal knowledge are thereby inherently and substantively rendered insufficient. Instead, *Warren* reflects a two-step analysis: First, does the affidavit affirmatively state it is based on personal knowledge by someone competent to testify to the matters contained therein? If so, then the affidavit may be considered as evidence. If not, then the trial court should secondly review the entire affidavit and determine whether the affiant is testifying from personal knowledge and is competent to give such testimony. If the answer to this latter question is "yes," then the affidavit has a defect of form, and the trial court should provide the offending party an opportunity to cure the defect. *Id.; see* TEX.R. CIV. P. 166a(f). If the answer to the second question is "no," as it

was in *Warren*, or if the party refuses to correct the defect of form, only then should the trial court disregard the affidavit's contents to determine whether the remaining evidence supports or defeats summary judgment.[5] TEX.R. CIV. P. 166a(f). "Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." *Id.*

■ In this case, the Youngblood affidavits submitted before the summary judgment hearing lack the phrase, "The facts in this affidavit are true and correct and within my personnel [sic] knowledge." The Texas Supreme Court has held that, if it is clear from reading an entire affidavit that an affiant is testifying from personal knowledge and is competent to testify regarding the matters so stated, the affidavit's failure to invoke the "personal knowledge" language is a mere defect of *form*. *Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex.1990); *see also Grotjohn Precise Connexiones Int'l v. JEM Fin., Inc.*, 12 S.W.3d 859, 866 (Tex.App.-Texarkana 2000, no pet.). If a party fails to object to a defect in the form of an affidavit, or fails to secure an adverse ruling on such an objection, then any objection to the affidavit for a defect in form

---

5. Nor does *Humphreys v. Caldwell*, 888 S.W.2d 469, 470–71 (Tex.1994) support U.S. Silica's analysis. In *Humphreys*, State Farm Mutual Insurance Company submitted an affidavit that included both personal knowledge of the affiant and second-hand information that the affiant had learned through investigating an automobile accident. The Texas Supreme Court held this composite or hybrid affidavit violated the rule that affidavits must be based exclusively on personal knowledge. The Court then disallowed consideration of the affidavit. *Id.* In the case now before us, the Youngbloods did not submit a composite or hybrid affidavit like that submitted in *Humphreys*.

Similarly, in *In re Estate of Loveless*, 64 S.W.3d 564, 571 n. 3 (Tex.App.-Texarkana 2001, no pet.), this Court found an affidavit to be incompetent because it was neither signed nor notarized. In *Clendennen v. Williams*, 896 S.W.2d 257, 260 (Tex.App.-Texarkana 1995, no writ), we held an affidavit that lacked a notary's signature and seal to be incompetent summary judgment proof. In the case now before us, Youngblood signed his affidavit, and it bears a notary's signature and seal as proof of having been sworn to. Accordingly, *Humphreys*, *Loveless*, and *Clendennen* each bear facts that materially distinguish them from the case now on review.

is waived. *Vaughan,* 792 S.W.2d at 945 (citing former Tex.R. Civ. P. 166a(e) (Vernon 1990), *now* Tex.R. Civ. P. 166a(f)); *Grotjohn Precise Connexiones Int'l,* 12 S.W.3d at 866. The ruling on an objection to an affidavit's form must be obtained at or before the trial court hears the summary judgment motion. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 343 n. 7 (Tex.1993).

We have reviewed the entirety of the Youngblood affidavits submitted before the summary judgment hearing. Johnny's affidavit discusses his initial visit with Stockman, the process of undergoing a bronchoscopy, and his conversations with Stockman, among other things. His affidavit is clearly based on personal knowledge. *Cf. Vaughan,* 792 S.W.2d at 945. Similarly, Carol's affidavit leads us to conclude that it, too, is based on her personal knowledge of the matters therein stated. We find the Youngbloods' failure to affirmatively state their affidavits were based on personal knowledge amounts to a defect of form, not of substance. As U.S. Silica did not, until well after the summary judgment hearing, obtain rulings on its objections to the form of the Youngbloods' affidavits, those objections have been waived.

U.S. Silica, however, further argues the Youngbloods' affidavits are merely a sham and, therefore, incompetent evidence.

> If a party's own affidavit contradicts earlier testimony, the affidavit must explain the reason for the change. *Farroux v. Denny's Rests., Inc.,* 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.). Without an explanation, it is assumed that the sole purpose of the affidavit was to avoid summary judgment, and as such, the affidavit merely presents a "sham" fact issue. *Id.*

*Burkett v. Welborn,* 42 S.W.3d 282, 286 (Tex.App.-Texarkana 2001, no pet.). "[A]n attempt to create a 'sham' fact issue ... will not defeat a motion for summary judgment." *Cantu v. Peacher,* 53 S.W.3d 5, 7 (Tex.App.-San Antonio 2001, pet. denied).

U.S. Silica correctly points out that, during his deposition, Youngblood testified he could not remember his prior conversations with Stockman.

> Q And what do you recall Dr. Stockman telling you?
>
> A I can't remember. . . .

In his affidavit submitted in response to U.S. Silica's motion for summary judgment, however, Youngblood testified,

> [In 1992,] Dr. Stockman could not provide me with an explanation as to what caused the abnormal chest x-ray and that annual treatment and a subsequent bronchoscopy by another physician was recommended. At no time, [punctuation sic] did Dr. Stockman inform me that I had an occupational lung disease or silicosis. In fact, Dr. Stockman told me I could return to work ... and carry out my duties as a tank-caster.

U.S. Silica contends Youngblood's sudden and unexplained ability to remember his 1992 conversation with Stockman (as recorded in Youngblood's summary judgment affidavit) directly conflicts with his deposition testimony. U.S. Silica then asserts "[b]ecause this aspect of Mr. Youngblood's affidavit contradicts his prior deposition, without any reasonable explanation, it fails to constitute probative summary judgment evidence, as a matter of law."

Looking at both statements in a vacuum, it would be easy for us to agree with U.S. Silica's position. We cannot, however, examine mere fragments of a deposition. We are required to examine the deposition testimony in the context of the entire deposition to determine if, in context, the deposition and the affidavit are not apposite so as to raise a fact issue that would

preclude summary judgment. *See Nixon,* 690 S.W.2d at 548–49 (requiring (2) all evidence favorable to the nonmovant to be taken as true regarding a disputed fact issue precluding summary judgment, and (3) every reasonable inference indulged in favor of nonmovant).

We believe Youngblood's affidavit is congruous with his deposition testimony. On the page following his above-cited testimony, the following exchange occurred:

> Q Other than this occasion in 1992 when Dr. Goldstein told you [sic] needed to have your X rays evaluated or to consult with your physician for further evaluation, do you recall any other times when you were told that your X ray was abnormal?
>
> A In '97 when they said that it was silicosis and asbestos.
>
> Q Is that the first time that anyone told you you had silicosis—
>
> A Yes, sir.
>
> Q —or asbestos?
>
> A Yes, sir. They just told me before that it was abnormal.

In light of the entirety of Youngblood's deposition testimony, we must conclude his summary judgment affidavit is harmonious with his deposition testimony. The thrust of both is the same: no one told him he had silicosis or asbestosis until 1997. Therefore, we disagree with U.S. Silica's contention that Youngblood's summary judgment affidavit is merely a sham that cannot be considered as substantive evidence.

■ Yet even if we were to conclude there were subtle differences between Youngblood's deposition and his affidavit, we could not say those differences were so egregious that the affidavit should be disregarded. *See Shaw v. Maddox Metal Works, Inc.,* 73 S.W.3d 472, 478 (Tex.App.-Dallas 2002, no pet.). Instead, any such inconsistencies or conflicts are such that they would create a fact issue that should be resolved by a jury. *Larson v. Family Violence & Sexual Assault Prevention Ctr.,* 64 S.W.3d 506, 513 (Tex.App.-Corpus Christi 2001, pet. denied) (finding trial court abused discretion if it excluded affidavit based on any alleged conflicts between affidavit and appellant's deposition).

Accordingly, we will consider the Youngbloods' affidavits in our review of the evidence to determine whether the trial court erred by granting summary judgment in favor of U.S. Silica. *Cf., Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 160–61 (Tex.App.-Waco 1995, no pet.).

### B. Granting Summary Judgment

■ "Typically, inquiries involving the discovery rule raise questions to be decided by the trier of fact, although the trial court may determine the commencement of limitations as a matter of law if reasonable minds could not differ about the conclusion to be drawn from the facts set forth in the record." *Nugent,* 30 S.W.3d at 567. In this case, the medical reports included differential diagnoses of silicosis and tuberculosis (or various other diseases) as early as 1992. The 1992–1996 medical records, however, do not affirmatively indicate Youngblood was ever made aware of these differential diagnoses. For example, Youngblood reported shortness of breath beginning in the late 1980s and early 1990s, with subsequent onset of prolonged coughing in the 1990s. One doctor told Youngblood his condition was probably the result of smoking cigarettes. Youngblood received news of abnormal x-rays in 1992 from Goldstein (a company physician) and from Stockman (Youngblood's personal physician). According to Youngblood, however, Stockman found no evidence of silicotic material, silicosis, or tuberculosis. It was not until he met with

Petroff December 5, 1997, that anyone told Youngblood he had silicosis.

From 1992 until 1997, the doctors hired by Kilgore Ceramics made repeated suggestions, in writing, that Youngblood visit his personal physician regarding the abnormal x-rays. The medical records admitted into evidence show Youngblood usually visited a doctor within two or three months of receiving those letters. We believe Youngblood's pattern of visiting his personal physician soon after receiving letters from company physicians shows Youngblood was exercising due diligence in trying to find the cause of his abnormal x-rays. Yet despite these timely doctor visits, Youngblood consistently stated no one could explain the cause of the breathing difficulties. According to Youngblood, no doctor formally diagnosed him with silicosis until December 1997. There was no evidence that a 1995 unsigned recommendation from Erwin to Surya Lanka, M.D., was either conveyed to Youngblood or acted on by Lanka. Thus, assuming Youngblood's testimony is believable (as we must in reviewing a grant of summary judgment, in which all evidence is viewed in the light most favorable to the nonmovant), this is not a case where the plaintiff failed to exercise due diligence or otherwise had sufficient information that he should have concluded his shortness of breath was related to inhalation of silica.[6]

The chief contradictory evidence comes from Stockman's 2002 affidavit (made ten years after she met with Youngblood) and anecdotal evidence suggesting Youngblood could have concluded his respiratory diffi-culties were related to breathing silica for more than forty years during his employment at Kilgore Ceramics (especially when the plant ordered periodic chest x-rays and made employees wear protective masks). But viewing the evidence in the light most favorable to Youngblood, there is more than a scintilla of evidence suggesting Youngblood neither discovered his disease, nor could he have assumed he had a work-related illness,[7] until so informed December 5, 1997. We therefore find the trial court erred by granting summary judgment in this case.

This holding is consistent with the Texas Supreme Court's expressed policy of not requiring plaintiffs to file suit "based only upon their suspicions about causal connections." *Childs*, 974 S.W.2d at 43. And our decision is consistent with the Texas Supreme Court's proclamation that the commencement of the statute of limitations cannot be determined as a matter of law if reasonable minds could differ about the conclusion to be drawn from the facts in the record. *Id.* at 44–46.

*Conclusion*

For the reasons stated, we find, when viewing the evidence in the light most favorable to Youngblood, there is more than a scintilla of evidence Youngblood used due diligence in determining the cause of his respiratory difficulties, but despite such efforts neither knew nor could have known his illness was work related until December 5, 1997.

---

**6.** Youngblood's medical records also indicate he had been exposed to tuberculosis when his father had the disease. It would not have been unreasonable for him to think his respiratory problems were related to the tuberculosis exposure rather than a byproduct of his employment. Furthermore, Youngblood's 1992 medical records from Stockman indi-cate she excluded silicosis as the cause of his problems.

**7.** One doctor had previously told Youngblood his shortness of breath was most likely attributable to smoking cigarettes. It is well-documented that smoking cigarettes is a leading cause of lung cancer.

We reverse the trial court's judgment and remand the case for further proceedings.