# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00316-CV

**Michael Russ King, Appellant**

**v.**

**Brinkmann Investments, Inc., Brinkmann Investments, Inc. d/b/a Brinkmann Roofing Co., Brinkmann Roofing & Sheet Metal Company, Inc., and Anthony Delmonico, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. GN-402162, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Russ King brought suit against Brinkmann Investments, Inc., Brinkmann Investments, Inc., d/b/a Brinkmann Roofing Co., Brinkmann & Sheetmetal Company, Inc. (collectively, "Brinkmann"), and Anthony Delmonico for negligence, negligence per se, and gross negligence for events arising from his alleged exposure to asbestos during his employment with appellees.[1]  Brinkmann and Delmonico filed motions for summary judgment contending that the statute of limitations had expired, and the trial court granted both motions.  King appeals, claiming that the statute of limitations did not accrue until he obtained a definite diagnosis of pulmonary asbestosis on August 18, 2003.  We affirm the district court's orders granting summary judgment for appellees.

---

[1] Initially, King also sued Robert Charanza, his supervisor when he worked at Brinkmann, but he later nonsuited Charanza, who is not a party to this appeal.

**Facts**

King sued appellees for negligence, negligence per se, and gross negligence due to his claimed exposure to asbestos in the course and scope of his employment. King alleged that between January 1995 and November 1995 he worked as an independent contractor for Brinkmann and removed roofing tile from Delmonico's residence. King contended that Charanza, his supervisor on the project, told him that the tile was cement and did not contain asbestos. Within two weeks of beginning the work, King began suffering symptoms including shortness of breath, flu-like symptoms, and pain in his left eye. He sought medical treatment and was prescribed antibiotics for a scratch on his cornea; the doctor he saw for his shortness of breath ran tests but did not arrive at a diagnosis. King continued to work on the project because he was unaware that his symptoms might be related to his employment. King claimed that in early November 1995, an unidentified passer-by informed him that the tiles contained asbestos. After being informed about the asbestos, King confronted Charanza, who fired him from the project. King's condition deteriorated, and he saw several doctors over the next few years, none of whom made a formal diagnosis of asbestosis.

Although he had not been diagnosed with asbestosis, King filed a Worker's Compensation Commission claim in October 1996, in which he attributed his injuries to asbestos. King described his injuries as "lung/chest/breathing problems" and stated that he was injured when he "was exposed to asbestos while removing asbestos tiles from a roof." King told the Commission that shortly after he started removing the tiles, he became sick, lost his voice, vomited, and coughed up discolored phlegm. He said that after experiencing those symptoms, he sought medical care, informing his doctors that he had been exposed to asbestos. In answers to interrogatories filed with

2

the Commission, King stated that his injury resulted from inhaling asbestos fiber while performing demolition work: "I am visually impaired with a scar from fibers on my left cornea which causes blurred vision. I now experience a severe cough, breathing problems, and gastrointestinal disorder, due to the ingestion of asbestos fibers." In another document, he stated that he "inhaled fiber in numerous amounts, becoming very ill" and losing his voice. King stated that when he breathed heavily, he started "choking up [phlegm] and gagging and then vomiting," and that he had blurred vision and gastrointestinal disorder "due to ingestion of asbestos fibers."

In a medical report from January 1998, Dr. Khin wrote that King sought the consultation due to "asbestos exposure," saying that King "had significant exposure to asbestos at work," causing "chronic cough." Dr. Khin stated that King had sought a diagnosis from an ear, nose, and throat doctor "regarding asbestos induced malignancy in the throat. But their opinion is nothing specific other than saying chronic cough. [King] is concerned of his extent of the asbestos exposure." In a September 1998 letter, an unidentified doctor examined King and wrote to Dr. Steve Loeschen, stating that King had "reactive airway disease with possible exposure to asbestos."[2] On August 18, 2003, Dr. Roger Casama diagnosed King with pulmonary asbestosis, and King sued on July 9, 2004.

_____

[2] The September 1998 letter included in the clerk's record lacks the signature page; therefore, we do not know the name of the doctor who wrote to Dr. Loeschen after examining King.

Delmonico also includes in an appendix to his brief the following documents: medical records from 1997 and 1998 stating that King's cough was "due to asbestos exposure" and that he had "reactive airway disease" and "asbestos exposure"; a 1997 report diagnosing King with "Occupational Lung disease"and noting "Occup. Exposure: Asbestos"; 1997 laboratory results showing that the tiles contained asbestos; and a 1997 letter stating that King's vision problem was "a typical reaction to long standing abestos [sic] in the eye." Because we do not find these documents in the clerk's record, we have not considered them in reaching our decision.

Appellees moved for summary judgment, contending that the statute of limitations began to run in 1995, when King made or should have made a causal connection between his symptoms and his alleged exposure to asbestos. Appellees argued that in no case did limitations begin to run later than 1998, when he was assessed by Dr. Khin and at least one other doctor and when he filed claims with the Worker's Compensation Commission and the City of Austin, claiming that he was suffering from an occupational disease related to asbestos exposure.[3] King argued that questions of fact remained as to when his cause of action accrued, contending that the statute of limitations did not begin to run until Dr. Casama's 2003 diagnosis of pulmonary asbestosis.

**Standard of Review**

A defendant seeking summary judgment based on the statute of limitations must prove conclusively the elements of that affirmative defense. *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 646 (Tex. 2000). When the plaintiff contends that the discovery rule exempts him from the statute of limitations, the defendant bears the burden to negate that exception. *Id.* The defendant must prove when the cause of action accrued and negate the plaintiff's assertion of the discovery rule by proving that it does not apply or that there is no genuine issue of fact about when he discovered or should have discovered the nature of his injury. *Zacharie v. U.S. Natural Res., Inc.*, 94 S.W.3d 748, 752 (Tex. App.—San Antonio 2002, no pet.).

---

[3] The form to which appellees refer is a medical evaluation on which Dr. Khin stated that King's reason for consultation was "asbestos exposure" and that he had "significant exposure to asbestos at work [causing] chronic cough." The form states that King was "concerned of his extent of the asbestos exposure" and had sought treatment, but had been diagnosed with "nothing specific other than . . . chronic cough." The form seems to ask another doctor to further evaluate King's condition, but it is not clear whether King was referred or who the other doctor was.

4

A lawsuit based on a personal injury claim must be filed within two years from the date the injury accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (West Supp. 2006). Latent asbestos-related injuries or diseases are governed by the discovery rule. *See Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998). Under the discovery rule, a cause of action accrues when a plaintiff knows or, through the exercise of reasonable care and diligence, should have known of the wrongful act and resulting injury. *Id.* at 37. A cause of action for a latent occupational disease does not accrue until (1) symptoms manifest to a degree or for a duration that would put a reasonable person on notice that he has suffered an injury and (2) he knows or in the exercise of reasonable diligence should have known that the injury is likely work-related. *Id.* at 40. A latent occupational disease claim does not accrue "until a reasonably diligent plaintiff uncovers some evidence of a causal connection between the injury and the plaintiff's occupation." *Id.* at 41.

To affirm a trial court's summary judgment, we must find that there is no genuine issue of material fact regarding the accrual of the statute of limitations and that the movants showed they were entitled to judgment as a matter of law. *See Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex. 1990). In making this determination, we must resolve all doubts and view all evidence and reasonable inferences in the nonmovant's favor. *Valance Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); Tex. R. Civ. P. 166a(c).

## Discussion

King argues that his cause of action did not accrue until Dr. Casama's August 2003 diagnosis of pulmonary asbestosis, citing to *Childs* for support. In *Childs*, the court held that if a plaintiff has exercised due diligence, his subjective belief that his exposure caused his symptoms is

5

insufficient by itself to establish accrual as a matter of law. 974 S.W.2d at 43. The court held that there was a fact question about what Haussecker should have known and done after his doctors "consistently reject[ed]" his belief that his symptoms were work-related by "expressly refuting" that belief or diagnosing only non-work related illnesses. *Id*. at 45. The court noted, however, that a plaintiff's cause of action may accrue before a definite diagnosis or before he knows the precise name of the disease causing his symptoms if he has access to information that would lead a reasonable person to believe that he likely suffers from a work-related injury. *Id*. at 42.

Unlike Haussecker, who suspected that his injuries were caused by his employment but was told by doctors that they were not and was diagnosed with only non-work related illnesses,[4] *id*. at 45, King stated in October 1996 that his "lung/chest/breathing problems" resulting from "expos[ure] to asbestos." He sought medical treatment quickly, explaining that he had been exposed to asbestos, and in 1998 Dr. Khin and one other doctor acknowledged his symptoms and validated his concerns, noting that his symptoms were the result of on-the-job asbestos exposure.

Viewing the evidence in King's favor, the record shows both that his symptoms manifested to a degree and for a duration that would put a reasonable person on notice that he had been injured and that he knew or should have known that the injury was likely work-related. *See id*.

---

[4] The plaintiff in *Childs v. Haussecker* was exposed to silica dust beginning in 1961, began having symptoms between 1963 and 1967, and was formally diagnosed with silicosis in 1990. 974 S.W.2d 31, 34-35 (Tex. 1998). Although the plaintiff filed a worker's compensation suit in 1968 alleging work-related silicosis, "several doctors, including a lung specialist, dispelled Haussecker's suspicions by telling him in 1968 that his symptoms were not work-related" and by diagnosing non-work-related prostate problems, lymphoma, or Hodgkin's disease. *Id*. at 45. Therefore, a fact question remained as to when the plaintiff "connected or reasonably should have connected his ongoing symptoms to his work." *Id*. at 45-46.

6

at 40. In 1996, he filed for worker's compensation benefits, claiming that his injuries, including blurred vision, breathing difficulties, and gastrointestinal disorders, were caused by his exposure to asbestos fibers while on the Brinkmann job, and in 1998, he filed a complaint or report with the City of Austin, complaining of his exposure. In 1997 and 1998, Dr. Khin and another doctor observed that King's symptoms and lung problems were "due to asbestos." Although King did not obtain a definite diagnosis of asbestosis until 2003, his doctors did not "consistently reject [his] suspicions concerning the cause of symptoms by expressly refuting an occupational connection or by suggesting exclusively causes that [were] not work-related," and instead validated his theory of a causal connection between his symptoms and his asbestos exposure. *See id*. at 42, 45.[5] The evidence demonstrates that King had more than a mere subjective belief and had both reason to believe and objective verification that he had been injured by asbestos exposure no later than 1998. *See id*. at 42-43. Therefore, King's cause of action accrued and the statute of limitations began to run in 1998.

---

[5] *Cf. Youngblood v. U.S. Silica Co.*, 130 S.W.3d 461 (Tex. App.—Texarkana 2004, pet. denied). In *Youngblood*, the plaintiff learned that his x-rays were abnormal and was told to seek further evaluation about six years before filing suit. *Id*. at 465-66. However, he did not assume his condition was work-related, and the doctors did not make a diagnosis of silicosis; one doctor told him that the abnormality was due to his smoking. *Id*. at 465-66, 470-71. Although there was evidence that doctors had made "differential diagnoses," including silicosis, Youngblood denied and there was no evidence that he was aware of the silicosis diagnosis. *Id*. at 470-71. The court held that the defendants had not proven that Youngblood had reason to believe his symptoms might be related to occupational silica inhalation until his formal diagnosis within two years of filing suit. *Id*.

In this case, King believed from the beginning that his symptoms were asbestos-related and filed a claim for worker's compensation on those grounds, his medical records show that doctors seemed to believe there was a causal link between his symptoms and his exposure, there is no evidence that any doctors ever told him his symptoms were caused by anything other than asbestos, and he filed a report with the City complaining of his exposure to asbestos and resulting symptoms.

Because King's suit was filed in July 2004, more than two years after his cause of action accrued, his claim is barred by limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a); *see Zacharie*, 94 S.W.3d at 751, 753 (cause of action accrued on date of doctor's statements that plaintiff was suffering from "pneumoconiosis, probably silicosis" and had been exposed to "silicosis and asbestosis type products 'over many years'"; plaintiff's symptoms and doctor's report showed that plaintiff knew she was suffering from lung disease that was work-related); *Roberts v. Lain*, 32 S.W.3d 264, 271 (Tex. App.—San Antonio 2000, no pet.) (plaintiff suffered immediate adverse reactions when exposed to chemicals in 1970s and began to associate symptoms to exposure in 1992, but did not sue until receiving 1997 doctor's report; court held that mere suspicion regarding causation was not by itself sufficient to begin running of limitations, but suspicion combined with initial adverse reaction established objective verification). Accordingly, we overrule King's sole issue on appeal.

## CONCLUSION

Having overruled King's issue on appeal, we affirm the district court's orders granting summary judgment in favor of appellees.

_____

David Puryear, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   August 25, 2006

8