In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00015-CR


______________________________




KELLY DIANE MCDOWELL, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 297th Judicial District Court


Tarrant County, Texas


Trial Court No. 1002906D




 



Before Carter, Moseley and Cornelius,* JJ.


Opinion by Justice Cornelius



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N



 In a jury trial, Kelly Diane McDowell was convicted of arson. The jury assessed McDowell's
punishment at seventy years' confinement, and found that she used a deadly weapon, gasoline, in
committing the offense.

 McDowell appeals, raising three issues: (1) legal and factual insufficiency of the evidence
to support the conviction; (2) insufficient evidence to support the jury's deadly weapon finding; and
(3) the trial court's denial of McDowell's application for community supervision. We overrule these
issues and affirm the judgment.

 McDowell lived for a time with her aunt and uncle, Margaret and Bill McDowell, in Haltom
City. She left their home when her uncle asked her to leave. On November 20, 2005, she came back
and spent the day with her Aunt Margaret. Bill McDowell was away, and Margaret consented for
Kelly to stay the night. The next day, while her aunt was away from home at work, Kelly set fire to
the house by igniting gasoline she had poured throughout the structure. She turned the house's
heating system on and placed a can of spray paint on the stove because she had been told that doing
so would make objects in the house warmer and the fire more intense. Firefighters testified at trial
that the fire was so intense the heat melted the fire-resistant helmets they wore while fighting the fire. 
One firefighter suffered burns on his ear and hand, and another suffered severe second-degree burns
on his ears through his fire-resistant helmet. Firefighters found traces of a flammable liquid in
several areas of the house, and they concluded that the fire was intentionally set by igniting the
gasoline that had been poured throughout the house. On the day before the fire, McDowell took her
aunt and uncle's computer from the house, along with six guns, two of which she pawned on the day
of the fire. McDowell also pawned her aunt and uncle's VCR, DVD player, and a rifle. She took
the computer with her to the motel where she stayed after she checked in on the night the fire was
set.

 McDowell signed a written statement and gave oral testimony at trial in which she freely
admitted setting the fire by using gasoline, but she said she set the fire because of duress by her
former boyfriend. She also admitted burning a motor home in Wise County about three days before
she burned her aunt and uncle's home.

 In her first issue, McDowell contends the evidence is legally and factually insufficient to
support her conviction. She argues the evidence is insufficient in two respects: it fails to show that
her act of setting fire to the house was an act "clearly dangerous to human life"; and the evidence
shows that, in setting the fire, she was acting under duress.

 In a review of the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). We review all the evidence in the
record, both direct and circumstantial. In reviewing the factual sufficiency of the evidence, we view
all the evidence in a neutral light and determine whether the evidence supporting the verdict is so
weak that the verdict is clearly wrong or manifestly unjust or against the great weight and
preponderance of the evidence. Roberts v. State, 220 S.W.3d 521 (Tex. Crim. App. 2007).

 McDowell was charged with arson under Section 28.02(a)(2)(A) of the Texas Penal Code,
which provides, among other things, that it is an offense to start a fire or cause an explosion with
intent to damage any habitation, knowing that the habitation is within the limits of an incorporated
city or town. See Tex. Penal Code Ann. § 28.02(a)(2)(A) (Vernon Supp. 2006). It is not
necessary to prove that the arson was clearly dangerous to human life in order to convict a person
for the offense described in Section 28.02(a)(2)(A) of the Texas Penal Code. The "clearly dangerous
to human life" standard is applicable to prosecutions for felony murder, not arson. See Tex. Penal
Code Ann. § 19.02(b)(3) (Vernon 2003). The case relied on by McDowell for this proposition is
Lawson v. State, 64 S.W.3d 396, 397-99 (Tex. Crim. App. 2001), which is a case of felony murder.

 As to McDowell's second issue, we find legally and factually sufficient evidence to justify
the jury's rejection of her duress defense. Duress may be a defense to criminal conduct if the actor
committed the proscribed conduct because she was compelled to do so by threat of imminent death
or serious bodily injury to herself or another. Tex. Penal Code Ann. § 8.05 (Vernon 2003). Duress
is an affirmative defense that the defendant must prove by a preponderance of the evidence, and it
is available only if the threat of death or serious bodily injury is imminent and is such that would
render a person of reasonable firmness incapable of resisting the pressure. United States v. Willis,
38 F.3d 170 (1994); Tex. Penal Code Ann. § 8.05(a), (c); Devine v. State, 786 S.W.2d 268, 269-70
(Tex. Crim. App. 1989); Anguish v. State, 991 S.W.2d 883, 886-87 (Tex. App.--Houston [1st Dist.]
1999, pet. ref'd); Smith v. State, 949 S.W.2d 333, 336-37 (Tex. App.--Tyler 1996, pet. ref'd).

 In an attempt to prove her defense of duress, McDowell stated in her written statement and
her testimony at trial that she formerly had a boyfriend, Reginald Washington, who is an African-American, and that her family was upset because she was dating a person of that ethnicity, and they
disowned her as a result. She said she tried to end her relationship with Washington because he was
not a good person, but Washington thought she wanted to end their relationship because of her
family's disapproval of him. McDowell said Washington thought she would restore their
relationship if her family was unable to help her, so he threatened to kidnap her children and burn
down her family's house with her family in it unless she agreed to burn it down. McDowell's
nineteen-year-old daughter was stationed at Fort Bliss in El Paso and her two boys, fifteen and
sixteen years of age, lived with McDowell's ex-husband in Boyd, Texas. McDowell said she did not
remember the exact date Washington made the threats against her family, but she thought he made
them about six months before she set the fire.

 There is ample evidence to justify the jury's rejection of McDowell's duress defense. First,
the threats by Washington, even if the jury believed they were made, were too remote in time from
McDowell's act of burning the house. In order for a threat to constitute duress under Section 8.05(a)
of the Texas Penal Code, it must be a threat of imminent death or serious bodily injury to the person
committing the crime or another person. A threat made six months before the threatened event is
not an imminent threat. See, e.g., Devine v. State, 786 S.W.2d 268; Anguish v. State, 991 S.W.2d
883 (four days); Smith v. State, 949 S.W.2d 333 (four months).

 Moreover, there are other circumstances pertaining to the fire and McDowell's actions that
tend to support the jury's failure to find McDowell's duress claim credible. On the day before the
fire, McDowell slipped into her aunt and uncle's house. While there, she took six guns and pawned
two of them. She also pawned her aunt and uncle's VCR and DVD player and took their computer. 
McDowell's children, whom she said Washington threatened to kidnap, were nearly grown and
Washington did not have easy access to them. McDowell admitted she burned a motor home in
Wise County about three days before she burned her aunt and uncle's house.

 McDowell also contends the evidence is insufficient to support the jury's finding that she
used gasoline as a deadly weapon in committing the arson. We reject this contention. Gasoline is
not a deadly weapon per se, but in the manner of its use or intended use, it can be capable of causing
death or serious bodily injury, and therefore can constitute a deadly weapon according to the
definition of that term in Section 1.07(a)(17)(B) of the Texas Penal Code. Tex. Penal Code Ann. 
§ 1.07(a)(17)(B) (Vernon Supp. 2006); Rogers v. State, 908 S.W.2d 239 (Tex. App.--El Paso 1995,
no pet.); Rice v. State, 771 S.W.2d 599, 601 (Tex. App.--Houston [14th Dist.] 1989, no pet.). 
Several firefighters, well trained in fighting fires and ascertaining the causes of them, testified that
in the manner of its use, gasoline as used by McDowell in this case was a deadly weapon. Two
firefighters were injured, one seriously, in the fire when the intense heat burned them through their
fire-resistant helmets.

 In her last issue, McDowell contends the trial court erred in denying her application for
community supervision. A defendant is eligible for community supervision under Article 42.12,
Section 4(e) of the Texas Code of Criminal Procedure if she files a sworn motion that she has not
previously been convicted of a felony in this or any other state. See Tex. Code Crim. Proc. Ann.
art. 42.12, § 4(e) (Vernon 2006). McDowell filed a sworn motion, as required, alleging she had
never been convicted of a felony, but the evidence at trial showed that in 1986 she was convicted of
aggravated possession of methamphetamine and was placed on probation for ten years. McDowell
argues that she was nevertheless eligible for community supervision for the current conviction
because she fulfilled her former probation and was discharged from it in 1996. We disagree. Unless
there has been an express finding by the trial court that the defendant was exonerated from the
previous finding of guilt, the defendant is still ineligible for community supervision even though she
has been discharged from community supervision and the conviction is set aside or even if she has
been pardoned. See Taylor v. State, 612 S.W.2d 566 (Tex. Crim. App. [Panel Op.] 1981); Watkins
v. State, 572 S.W.2d 339, 343 (Tex. Crim. App. 1978); Samaniego v. State, 647 S.W.2d 762, 764
(Tex. App.--Austin 1983, no pet.).



 For all the reasons stated, we affirm the judgment of the trial court.


 


 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: June 26, 2007

Date Decided: August 28, 2007


Publish 



p. v. CRB Mktg.,
Inc., 566 S.W.2d 573, 574 (Tex. 1978)). Essentially, failure to file a sworn denial of a verified
account "amounts to an admission that the account is correct." Akins v. Coffee, 376 S.W.2d 953, 954
(Tex. Civ. App.--Dallas 1964, writ dism'd). 

 Sundance's answer was allegedly verified through an affidavit filed by David Pat Patman,
chief operating officer of Sundance. The affidavit merely stated that Patman "declared that he ha[d]
read the foregoing document, and the statements contain[ed] in the Verified Denial therein [we]re
true and correct." In order for an affidavit to be legally sufficient, "verification must be based on
personal knowledge." Cantu v. Holiday Inns, Inc., 910 S.W.2d 113, 116 (Tex. App.--Corpus Christi
1995, writ denied); see Kerlin v. Arias, 274 S.W.3d 666, 668 (Tex. 2008). An affidavit that does not
positively and unqualifiedly represent that the facts disclosed therein are true and within the affiant's
personal knowledge is legally insufficient. Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex.
1994) (citing Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984)); Akins, 376 S.W.2d at 955. 
Since Patman's affidavit did not aver that he had personal knowledge of the facts alleged in
Sundance's answer, we conclude it was unverified. 

 Finding that Sundance's answer was insufficient to meet the requirements of either Rule 185
or Rule 93, it follows that the validity of the account sued upon remained unchallenged and no issue
of fact was presented for the trial court to resolve. (3) Vance v. Holloway, 689 S.W.2d 403 (Tex. 1985);
Akins, 376 S.W.2d at 955; see Livingston Ford Mercury, Inc., 997 S.W.2d at 430 ("If the party
against whom a proper sworn account petition is filed does not deny the account in accordance with
the requirements of Rule 185, the plaintiff's petition with supporting affidavit is considered prima
facie evidence to support a summary judgment, and additional proof of the accuracy of the account
is unnecessary."). Thus, the trial court's summary judgment was proper. 

 Our finding above is wholly dispositive of this appeal. Nevertheless, we will briefly address
Sundance's remaining points of error. 

 B. The Trial Court Properly Considered the Summary Judgment Affidavits 

 Sundance alleged that Meaux's affidavit was insufficient because it: (1) was conclusory in
nature; (2) failed to identify the facts of which Meaux had personal knowledge; (3) failed to
demonstrate that Meaux was competent to testify; and (4) failed to present a basis to support the
conclusion that the invoices were true and correct. Sundance admits that "the Trial Court failed to
rule or issue an order as to Sundance's objections to the Meaux affidavit." Sundance suggests the
summary judgment effectively overruled the objections to Meaux's affidavit. Because this is not
entirely the case, we examine whether Sundance preserved these objections for our review.

 The granting of a summary judgment motion "does not necessarily provide an implicit ruling
that either sustains or overrules objections to the summary-judgment evidence." Choctaw Props.,
L.L.C. v. Aledo I.S.D., 127 S.W.3d 235, 240-41 (Tex. App.--Waco 2003, no pet.) (citing Allen
ex rel. B.A. v. Albin, 97 S.W.3d 655, 663 (Tex. App.--Waco 2002, no pet.)). Rule 166a(f) of the
Texas Rules of Civil Procedure specifically states that "Defects in the form of affidavits or
attachments will not be grounds for reversal unless specifically pointed out by objection by an
opposing party with opportunity, but refusal, to amend." Tex. R. Civ. P. 166a(f). Texas courts have
interpreted this rule to require parties to obtain a ruling from the court, preferably in writing, in order
to preserve objections to defects of form for our review. Stewart v. Sanmina Tex. L.P., 156 S.W.3d
198, 207 (Tex. App.--Dallas 2005, no pet.); Choctaw Props., L.L.C., 127 S.W.3d at 240-41;
Dolcefino v. Randolph, 19 S.W.3d 906, 926-27 (Tex. App.--Houston [14th Dist.] 2000, pet.
denied). 

 "Failure to affirmatively show that the affiant had personal knowledge is a defect in form and
must be preserved in the trial court." Stewart, 156 S.W.3d at 207 (quoting Grand Prairie Indep. Sch.
Dist. v. Vaughan, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam)); Youngblood v. U.S. Silica Co.,
130 S.W.3d 461, 468 (Tex. App.--Texarkana 2004, pet. denied) (failure to show affiant competent
to testify is defect in form). Although Sundance mentioned its objections to the affidavit during the
hearing, they were argued after responding to Dialog's summary judgment motion. In addition,
Sundance failed to ask for a ruling from the trial court until after judgment was issued. If the record
affirmatively indicates that the trial court ruled on the objections to the summary judgment proof in
granting summary judgment, or if the grounds for summary judgment and the objections to the
summary judgment proof are of such a nature that the granting of summary judgment necessarily
implies a ruling on the objections, the burden of the objecting party to obtain a ruling on its
objections can be deemed to have been satisfied. Trusty v. Strayhorn, 87 S.W.3d 756, 760 (Tex.
App.--Texarkana 2002, no pet.). Since neither of these circumstances exist here, that does not
apply. Thus, arguments two and three recited above--that the affidavit failed to identify the facts
of which Meaux had personal knowledge and failed to demonstrate Meaux was competent to
testify--were waived by Sundance. See Choctaw Props., L.L.C., 127 S.W.3d at 241; Youngblood,
130 S.W.3d at 468-69. 

 However, defects in substance "are not waived, and can be raised for the first time on
appeal." Stewart, 156 S.W.3d at 207 (quoting Choctaw Props., L.L.C., 127 S.W.3d at 241). The
allegation that a summary judgment affidavit is conclusory involves a substantive defect. Id.;
Choctaw Props., L.L.C., 127 S.W.3d at 241 (citing Cain v. Rust Indus. Cleaning Servs., Inc., 969
S.W.2d 464, 467 (Tex. App.--Texarkana 1998, pet. denied)). Substantive defects must be
specifically pointed out such that it "enables the trial court to understand the precise grounds so as
to make an informed ruling and affords the offering party an opportunity to remedy the defect, if
possible." Womco, Inc. v. Navistar Int'l Corp., 84 S.W.3d 272, 281 n.6 (Tex. App.--Tyler 2002, no
pet.). Bare allegations that quote sentences from an affidavit and claim they are conclusory are in
themselves conclusory. Stewart, 156 S.W.3d at 207; Womco, Inc., 84 S.W.3d at 281 n.6; Garcia v.
John Hancock Variable Life Ins. Co., 859 S.W.2d 427, 434 (Tex. App.--San Antonio 1993, writ
denied). 

 Sundance merely quoted Meaux's affidavit that "The invoices attached as Exhibit 'A' to
Motion for Summary Judgment are true and correct," and recited the following objection: "The
testimony lacks foundation and is conclusory and is not competent summary judgment
evidence . . . To wit: no evidence or basis for conclusion that invoices are 'true and correct', and that
'financial manager' is competent to so testify." The first part of Sundance's objection is conclusory,
while the second portion relates to objections of form which were waived. Sundance also contends
that there was "no identification of or description as to which 'facts' [were] 'true and correct.'" 
Because the affidavit refers to all facts contained within the summary judgment motion and affidavit,
it was sufficient, and we overrule Sundance's substantive objections to the Meaux affidavit. See
Requipco, Inc., 738 S.W.2d at 301. (4)

 Sundance also objected to the portion of Hill's affidavit, stating "the annexed account in favor
of Plaintiff against Defendant are within the personal knowledge of Affiant, just and true, that it is
due, and that all just and lawful offsets, payment and credits have been allowed." Once again, the
objections were conclusory or related to matters of form which were waived. Sundance's substantive
objections to the Hill affidavit are overruled, especially since Hill's affidavit met Rule 185
requirements. 

 C. Sundance Waived Its Special Exceptions

 The Texas Supreme Court stated "a summary judgment motion that does not identify or
address causes of action or their essential elements--even though it states that it embraces all causes
of action--does not support summary judgment against those causes of action." Claxton v. (Upper)
Lake Fork Water Control & Improvement Dist. No. 1, 246 S.W.3d 381, 382 n.1 (Tex.
App.--Texarkana 2008, pet. denied) (citing Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20 (Tex.
1990)). Sundance was correct to attack the summary judgment motion on specificity grounds
through its special exception. Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 784 (Tex.
App.--Houston [14th Dist.] 2004, no pet.). However, it was required to obtain a ruling on the
special exception in order to preserve the issue for appeal. Id. (citing Rosas v. Hatz, 147 S.W.3d
560, 562 (Tex. App.--Waco 2004, no pet.)). Instead, Sundance proceeded to argue the summary
judgment before discussing the special exception, and never sought a ruling from the trial court until
after judgment was issued. 

 Contrary to Sundance's position, granting summary judgment does not imply a ruling on a
special exception. See id. at 784-85; Rosas, 147 S.W.3d at 562; Dolcefino, 19 S.W.3d at 926-27. 
Nothing in the record suggests the trial court actually ruled on the issue that was raised. Because
Sundance failed to obtain a ruling from the trial court on its special exception, it was waived;
therefore, we must overrule this point of error. 

IV. Conclusion 

 We affirm the trial court's summary judgment on sworn account in favor of Dialog.



 Bailey C. Moseley

 Justice


Date Submitted: April 7, 2009

Date Decided: April 8, 2009
1. The term wireline usually refers to a cabling technology used by operators of oil and gas
wells to lower equipment or measurement devices into the well for the purposes of well intervention
and reservoir evaluation. http://www.answers.com/topic/wireline
.
2. An affidavit of attorney's fees executed by Jerry W. Hill was also attached. 
3. Also, Rule 166(c) of the Texas Rules of Civil Procedure required Sundance's response to
Dialog's summary judgment motion be filed "not later than seven days prior to the day of hearing." 
Tex. R. Civ. P. 166(c). Sundance's response was late by one day, and the trial court was not required
to consider it. See Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 686-87 (Tex.
2002); Brown v. Ultramar Diamond Shamrock Corp., No. 13-02-535-CV, 2004 WL 1797580, at *6
(Tex. App.--Corpus Christi Aug. 12, 2004, no pet.) (mem. op.).
4. We also note Sundance failed to produce any evidence contradicting Dialog's evidence or
facts contained within the summary judgment motion.