Clifford and Vickie PEERENBOOM, Individually and as Next Friends of JoAnn Peerenboom, a minor, Appellants,

v.

HSP FOODS, INC., d/b/a Jack in the Box, Appellee.

No. 10–95–089–CV.

Court of Appeals of Texas, Waco.

Nov. 1, 1995.

---

Shane M. Sanders, Adams, Brantley, Holt & Sanders, P.L.L.C., College Station, Lane D. Thibodeaux, James & Thibodeaux, P.L.L.C., Bryan, for appellants.

Ché D. Williamson, Munisteri, Sprott, Lefevre & Rigby, Houston, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

This is a premises liability case. Clifford and Vickie Peerenboom sued Jack in the Box as next friends of JoAnn Peerenboom, their daughter. They alleged that an off-duty employee of the company, David Wester, assaulted JoAnn, also an off-duty employee, on its premises on October 16, 1992. At the time of the incident Wester was twenty-seven and JoAnn was sixteen. According to the Peerenbooms, after JoAnn completed her shift at about 11:00 p.m., Wester "lured" her to a dumpster enclosure behind the restaurant where he sexually assaulted her.

The Peerenbooms asserted claims against Jack in the Box of negligence, negligence per se, and gross negligence. Jack in the Box filed a motion for summary judgment on grounds that JoAnn was a trespasser at the time and place of the alleged assault, or alternatively, that it was not the cause in fact of the assault, which was not foreseeable. Summary judgment was entered for Jack in the Box.

The Peerenbooms complain in four points that the court erred in granting summary judgment because genuine issues of material fact exist as to whether JoAnn was an invitee, licensee, or trespasser at the time and place of the incident; whether Jack in the Box breached its corresponding duty to her; and whether Jack in the Box proximately caused the alleged assault. We conclude that: 1) the summary-judgment proof establishes as a matter of law that JoAnn was a trespasser at the time of the alleged incident; 2) genuine issues of fact exist as to whether Jack in the Box breached its duty to JoAnn as a trespasser; and 3) genuine issues of fact exist as to whether Jack in the Box's conduct was the proximate cause of the Peerenbooms' injuries. Thus, we reform the summary judgment to a partial summary judgment as to JoAnn's status as a trespasser, and reverse and remand for a trial on the merits.

## STANDARD OF REVIEW

In reviewing the summary judgment, we must determine whether Jack in the Box met its burden by establishing that no genuine issue of material fact exists. *See Nixon v. Mr. Property Mgmt.*, 690 S.W.2d 546, 548 (Tex.1985); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). As defendant, Jack in the Box bears the burden of proving its entitlement to the summary judgment as a matter of law by conclusively negating one of the essential elements of each of the Peerenbooms' claims. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (1991); *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex.1991); *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975). We must accept all evidence favorable to the Peerenbooms as true, indulging every reasonable inference and resolving all doubts in

their favor. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993). We will consider evidence which favors Jack in the Box only if it is uncontroverted. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

## SCOPE OF REVIEW

The parties disagree as to what we should consider as summary-judgment evidence. Jack in the Box argues that the affidavits of Jackie Campbell and Michael E. Mackey, which comprise a large portion of the Peerenbooms' summary-judgment evidence, were not properly before the trial court and should not be considered. Jack in the Box objected to the form of these affidavits at the summary-judgment hearing on December 7, 1994.[1] The Peerenbooms asked for an opportunity to cure the defects,[2] and the hearing was reset for December 27. However, the Peerenbooms waited until that day to file the amended affidavits, and leave to file was not granted.

According to Rule 166a(c), "[e]xcept on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response." TEX.R.CIV.P. 166a(c). Jack in the Box argues that the Peerenbooms failed to comply with Rule 166a and, thus, the amended affidavits are presumed to be disallowed and are not entitled to evidentiary consideration. *See INA of Tex. v. Bryant*, 686 S.W.2d 614, 615 (Tex. 1985); *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex.1970); *Kotzur v. Kelly*, 791 S.W.2d 254, 255–56 (Tex.App.—Corpus Christi 1990, no writ). The Peerenbooms argue in response that, since Jack in the Box failed to obtain a ruling on its objections or obtain a written order signed by the trial

judge and entered of record, the objections are waived and the original affidavits remain a part of the summary-judgment record. *See Giese v. NCNB Tex. Forney Banking Ctr.*, 881 S.W.2d 776, 782 (Tex.App.—Dallas 1994, no writ); *Eads v. American Bank, N.A.*, 843 S.W.2d 208, 211 (Tex.App.—Waco 1992, no writ).

■ The resolution of this argument depends on the type of defect at issue. A defect in substance, such as the absence of proper authentication, cannot be waived by failing to object or obtain a written order. *Kotzur*, 791 S.W.2d at 256. "This objection may be raised for the first time on appeal because an unsworn statement is not an affidavit and, therefore, not competent summary judgment proof." *Id.* Thus, if the Peerenbooms' original affidavits are substantively defective, Jack in the Box is correct in arguing that the affidavits are not entitled to evidentiary consideration, despite its failure to obtain a written order on its objections.

■ On the other hand, "[d]efects in the *form* of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend." TEX.R.CIV.P. 166a(f) (emphasis added). Further, even if properly objected to, affidavits will remain part of the summary-judgment evidence unless an order sustaining the objection is "reduced to writing, signed, and entered of record." *Eads*, 843 S.W.2d at 211. Thus, if the original affidavits are defective in form, the Peerenbooms are correct in arguing that Jack in the Box waived its objections because it failed to obtain a written order. Consequently, those affidavits would remain part of the summary-judgment record.

■ In this case, Jack in the Box objected to the original Campbell and Mackey affidavits primarily because they did not establish the competency of the affiants under Rule 166a(f). TEX.R.CIV.P. 166a(f). Even the title

---

1. Jack in the Box objected to Jackie Campbell's affidavit because:
   [it] only states that "My name is Jackie Campbell." There is no other information on the face of the affidavit to qualify it as sworn and competent testimony. Specifically an affidavit must show that the person is competent to testify by stating the person is over the age of 18 and of sound mind.
   It also objected to all statements of hearsay within her affidavit. Jack in the Box objected to Lee Mackey's affidavit because:

[it] merely states that "I am competent in all ways to make this affidavit." This statement does not meet the requirements of TRCP 166a(f) in that [it] does not demonstrate the facts necessary to establish the competency of the witness to give sworn testimony.... In addition mere conclusions are not competent summary judgment evidence.

2. This request was tacitly approved by Jack in the Box and the court. No order was entered.

of Rule 166a(f), "*Form* of Affidavits; Further Testimony," suggests that competency defects are matters of form that are easily cured. *Id.* (emphasis added); *see Life Ins. Co. of Va. v. Gar–Dal, Inc.,* 570 S.W.2d 378, 381 (Tex.1978); *Wyatt v. McGregor,* 855 S.W.2d 5, 17–18 (Tex.App.—Corpus Christi 1993, writ denied); *Jones v. McSpedden,* 560 S.W.2d 177, 179 (Tex.Civ.App.—Dallas 1977, no writ). We conclude that Jack in the Box waived its objections to the original Campbell and Mackey affidavits by failing to secure an order that was "reduced to writing, signed, and entered of record." *Eads,* 843 S.W.2d at 211. Thus, we will consider both original affidavits as part of the summary-judgment record.

### JOANN'S STATUS

To prevail on its motion for summary judgment, Jack in the Box must conclusively negate one of the essential elements of each of the Peerenbooms' claims for negligence. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991). The common-law duty of negligence consists of three essential elements: 1) a legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately resulting from the breach. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The duty owed by a premise owner or occupier is determined by the status of the complaining party at the time and place of injury. *Graham v. Atlantic Richfield Co.,* 848 S.W.2d 747, 751 (Tex.App.—Corpus Christi 1993, writ denied).

We first examine whether there is a genuine issue of material fact as to JoAnn's status at the time and place of the incident. Jack in the Box argued in its motion for summary judgment that JoAnn was a trespasser at the time of the alleged assault, and that it had only a duty not to willfully injure her. *See Burton Constr. & Shipbuilding Co. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 603 (1954). In response, the Peerenbooms argued that JoAnn was an invitee at the time of the alleged assault and that Jack in the Box owed her a duty of reasonable care to protect her from foreseeable injuries. *Rosas v. Bud-*

*dies Food Store,* 518 S.W.2d 534, 537 (Tex. 1975).

### DIVISION OF PREMISES

A person can enter property as an invitee or licensee as to one part of the property and become a trespasser as to another part of the property. *Burton Constr. & Shipbuilding Co.,* 273 S.W.2d at 602; *Hopkins v. Texas Power and Light Co.,* 514 S.W.2d 143, 148 (Tex.Civ.App.—Dallas 1974, no writ); *Crum v. Stasney,* 404 S.W.2d 72, 75 (Tex.Civ.App.—Eastland 1966, no writ); *Fitzgerald v. Andrade,* 402 S.W.2d 563, 566 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.). The status of an invitee or licensee, who has permission to be on part of the premises, decreases to that of a trespasser when he makes an unforeseen departure to another part of the premises uninvited. *Williams v. Bill's Custom Fit, Inc.,* 821 S.W.2d 432, 435 (Tex.App.—Waco 1991, no writ). For example, a plaintiff who has a license to cross railroad tracks at a private railroad switching yard becomes a trespasser when sleeping in the rail yard, because the license to cross the tracks does not include the license to sleep in the yard. *Texas & N.O.R. Co. v. Daft,* 120 S.W.2d 481, 484 (Tex.Civ.App.—El Paso 1938, no writ).

However, an invitee or licensee does not become a trespasser if the owner can reasonably foresee that the invitee or licensee will use part of the premises without permission, or for a purpose other than the one permitted. *See Fisher Constr. Co. v. Riggs,* 320 S.W.2d 200, 205–06 (Tex.Civ.App.—Houston) (general contractor should reasonably anticipate that employees of its subcontractors might take a shortcut through store space), *rev'd on other grounds,* 160 Tex. 23, 325 S.W.2d 126 (1959); *Bohn Bros. v. Turner,* 182 S.W.2d 419, 421–22 (Tex.Civ.App.—Austin 1944, writ ref'd w.o.m.) (store should anticipate that some customers may enter the wrong door and fall down basement stairs after being invited to use the restroom).

### INVITEE

An invitee is a person who enters the premises of another in answer to an express or implied invitation from the owner or occupier for their mutual benefit. *Texas Power & Light Co. v. Holder,* 385 S.W.2d

873, 885 (Tex.Civ.App.—Tyler 1964), *writ ref'd n.r.e. per curiam,* 393 S.W.2d 821, 822 (Tex.1965). The test to determine whether a person is an invitee at the time and place of the injury is "whether the owner of the premises should have anticipated the presence of someone such as the plaintiffs at that particular place on the premises." *Amoco Chemicals Corp. v. Sutton,* 551 S.W.2d 459, 462 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.); *see Triangle Motors of Dallas v. Richmond,* 152 Tex. 354, 258 S.W.2d 60, 62 (1953). It is undisputed that JoAnn was an invitee during her shift as a Jack in the Box employee. The question is whether the scope of her invitation was broad enough to include the off-duty use of the dumpster enclosure for the purpose for which she used it. *Triangle Motors of Dallas,* 258 S.W.2d at 62. This depends on whether Jack in the Box could reasonably have anticipated that such use or a similar use would be made of the dumpster enclosure by someone in JoAnn's position. *See id.*

It is undisputed that JoAnn was not performing any duty on behalf of Jack in the Box at the time and place of the incident. She admits to voluntarily accompanying Wester to the back of the restaurant and into the relative privacy of the dumpster enclosure. According to JoAnn's account of the event to police, Wester then kissed her and fondled her breasts. It is unclear what, if anything, took place beyond that. JoAnn's deposition testimony is, "I don't remember." However, JoAnn's therapist, Bets McSpadden, Ph.D., testified that, after meeting with JoAnn, she "believed she was raped." Dr. McSpadden reached this conclusion without reviewing any medical records.

■ The Peerenbooms direct us to two sources of evidence to argue that Jack in the Box should have anticipated the presence of someone such as JoAnn at the dumpster: the affidavit of Jackie Campbell and the deposition testimony of Russell McMillian. Both were employed by Jack in the Box at the time of the alleged incident. Relevant portions of Campbell's affidavit state that restaurant policies prohibiting access to the dumpster after 7:00 p.m. and requiring off-duty employees to wait for transportation in the break room were "virtually never followed" and that "employees who had completed their shift routinely waited for their rides in places other than the break room, for example either in the dining room area or in front of the restaurant." This evidence does not present a reasonable inference that off-duty employees such as JoAnn would be present *inside* the dumpster enclosure.

McMillian was regularly scheduled to work the "graveyard shift" between 10:00 p.m. and 6:00 a.m. Relevant portions of his deposition testimony are as follows:

Q: Okay. Had you been back [to the dumpster]—how many times had you been back there after approximately 7:00 o'clock at night?

A: Well, I go out there, like, every night, you know, you know, almost every night to take—like a whole lot of, you know, like boxes and stuff out there to the dumpster.

  .      .      .      .      .

Q: You say you do it on a nightly basis or every time that you worked?

A: Well, almost every time.

  .      .      .      .      .

Q: When you took those boxes back to the dumpster two or three times a week, was that on instructions by people at Jack in the Box, your shift manager?

A: No. It was because the boxes was, you know, blocking the back door. They were, you know, like, they was in the way.

While McMillian's testimony might raise a fact issue as to whether Jack in the Box should anticipate the presence of employees performing their duties at the dumpster enclosure, it raises no fact issue as to whether Jack in the Box should have reasonably anticipated that off-duty employees would use the dumpster enclosure for personal reasons after hours. Thus, we conclude that the scope of JoAnn's invitation was not broad enough to include her off-duty use of the dumpster enclosure for the purpose for which she used it.

## LICENSEE

■ We next consider JoAnn's possible status as a licensee. A licensee is a person who is privileged to enter and remain on the premises by the express or implied permission of the owner. *Smith v. Andrews*, 832 S.W.2d 395, 397 (Tex.App.—Fort Worth 1992, writ denied). The difference between a licensee and an invitee is that an invitee is present for the mutual benefit of himself and the owner, while a licensee is on the premises only for his own purposes, not because of any business dealings with the owner. *Id.* In the absence of a relationship that inures to the mutual benefit of the entrant and the owner, an entrant is considered a licensee. *Weaver v. KFC Mgmt, Inc.*, 750 S.W.2d 24, 26 (Tex.App.—Dallas 1988, writ denied). For example, a plaintiff who slips on chicken grease while cutting across the parking lot of a chicken restaurant on his way to the drug store is a licensee because his presence does not provide mutual aid to the restaurant. *See id.*

■ It is undisputed that JoAnn was a licensee when she clocked out after her shift; she was expressly permitted to wait in the employee break room until her transportation arrived. McMillian's testimony establishes summary-judgment evidence that Jack in the Box employees occasionally disposed of trash after 7:00 p.m., despite a policy to the contrary. However, conditional consent to enter the dumpster enclosure to dispose of trash creates a privilege to do so only to that extent. *See Brown v. Dellinger*, 355 S.W.2d 742, 746 (Tex.Civ.App.—Texarkana 1962, writ ref'd n.r.e.). Accordingly, on-duty Jack in the Box employees who have a license to dispose of trash after 7:00 p.m. become trespassers when they enter the dumpster enclosure after work for personal reasons, because the license to dispose of trash while at work after 7:00 p.m. does not include the license to use the dumpster enclosure for personal reasons after work. *See Texas & N.O.R. Co. v. Daft*, 120 S.W.2d 481, 484 (Tex.Civ.App.—El Paso, no writ).

We conclude that, since JoAnn made an unforeseen departure from the part of the restaurant where she was a licensee to another part of the premises without license or invitation, her status at the time and place of the alleged injury decreased to that of a trespasser. Having so decided, we must now determine whether Jack in the Box conclusively established as a matter of law that there is no genuine issue of fact as to whether it breached its legal duty to JoAnn as a trespasser. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

## BREACH OF DUTY

### TRESPASSER

■ Owners or occupiers of premises have a duty to refrain from injuring trespassers wilfully, wantonly, or through gross negligence. *Burton Constr. & Shipbuilding Co. v. Broussard*, 154 Tex. 50, 273 S.W.2d 598, 602–03 (1954). Jack in the Box has no affirmative duty to keep the dumpster enclosure safe for trespassers. *Texas Cities Gas Co. v. Dickens*, 140 Tex. 433, 168 S.W.2d 208, 210 (1943). Trespassers must therefore take those premises·as they find them. *Id.*

Gross negligence includes two elements:
1) viewed objectively from the standpoint of the actor, *the act or omission must involve an extreme degree of risk,* considering the probability and magnitude of the potential harm to others, and
2) *the actor must have actual, subjective awareness of the risk* involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex.1994) (emphasis added). Determining whether the act or omission involves an extreme degree of risk requires an examination of the events and circumstances from Jack in the Box's viewpoint at the time the event occurred, without viewing the matter in hindsight. *Id.* "[T]he 'extreme risk' prong is not satisfied by a remote possibility of injury or even a high probability of minor harm, but rather 'the likelihood of serious injury' to the plaintiff." *Id.* at 22.

■ In evaluating the first prong of the test for gross negligence in this summary-judgment context, we ask: Did Jack in the Box conclusively establish that there is no

genuine issue of fact as to whether its conduct created an extreme degree of risk to JoAnn? *See id.* The second prong of the test requires Jack in the Box to conclusively establish that there is no genuine issue of fact as to whether it had actual subjective knowledge of an extreme risk of serious harm. *See id.* The Peerenbooms direct us to the affidavit of Michael Lee Mackey, a private security specialist, to argue that Jack in the Box injured JoAnn through gross negligence by failing to provide adequate security and lighting, failing to enforce its policy of limiting access to the dumpster, and failing to tell her that Wester talked with Jack in the Box management about "messing with a sixteen year old." Relevant portions of Mackey's affidavit state:

> I have review[ed] ... Bryan Police Department records including reports of assaults from January 1990 to April 1994 [which occurred in the area of the restaurant]. In all, approximately 97 reported assaults took place during this time period, including approximately 57 assaults during the time period of 1990 to 1992.
>
> I have also reviewed reports of criminal activity to the Bryan Police Department for ... the street address of the restaurant.... From the time period of 1990 to the date of the incident there were 13 reported incidents of criminal activity at the restaurant, including 5 reported assaults.
>
> .   .   .   .   .
>
> It is also my opinion that because the restaurant management had prior knowledge and notice of Wester's intentions to "mess" with a 16 year old (which I assume was Plaintiff) that [its] actions and omissions were grossly negligent. In addition, the restaurant's actions were actively negligent because it knew of Wester's intentions, knew such impending conduct by Wester was unlawful but did nothing to warn Plaintiff's family.... The presence of a security guard on the premises and, to a lesser extent, superior lighting in the area would have deterred Wester from the incident.

Accepting this evidence as true, and indulging every reasonable inference in the Peerenbooms' favor, we believe this constitutes some evidence that Jack in the Box created an extreme degree of risk or a likelihood of serious injury. *See Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993). It is also some evidence that Jack in the Box had a subjective knowledge of that risk. Thus, it creates a genuine issue of fact as to whether Jack in the Box breached its duty to refrain from injuring JoAnn through gross negligence.

### PROXIMATE CAUSE

Finally, the Peerenbooms contend that Jack in the Box failed to conclusively establish as a matter of law that there is no genuine issue of fact as to whether its conduct was the proximate cause of the incident. Thus, our task in determining the propriety of the summary judgment in this appeal is not completed. We will reverse the judgment if the summary-judgment evidence is insufficient to establish, as a matter of law, that Jack in the Box's conduct was not a proximate cause of the harm alleged by the Peerenbooms. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991).

■■■■ Ordinarily, proximate cause is a fact question incapable of conclusive proof. *McGuire v. Overton Memorial Hosp.,* 514 S.W.2d 79, 85 (Tex.Civ.App.—Tyler 1974), *writ ref'd n.r.e. per curiam,* 518 S.W.2d 528 (Tex.1975); *Springall v. Fredericksburg Hosp. and Clinic,* 225 S.W.2d 232, 234 (Tex. Civ.App.—San Antonio 1949, no writ) (the issue of proximate cause "is one of fact and is generally determinable by a jury"). Even if the facts are undisputed, the determination of proximate cause is still a jury issue if reasonable minds may draw conflicting inferences from those facts. *Springall,* 225 S.W.2d at 234.

### CAUSE IN FACT

■■■■ Proximate cause consists of cause in fact and foreseeability. *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896

S.W.2d 156, 161 (Tex.1995). Cause in fact is not shown if the defendant's conduct did no more than furnish a condition which made the injury possible. *See Bell v. Campbell,* 434 S.W.2d 117, 120 (Tex.1968). At some point in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 776 (Tex.1995).

The Peerenbooms assert that the following acts or omissions by Jack in the Box were substantial factors in bringing about their alleged injuries: failure to provide adequate security and lighting; failure to enforce its policies and procedures; and failure to report and actively fire or restrain Wester after learning of his intention to "mess with a sixteen year old." Mackey's affidavit states:

> Wester was an employee and knew of the lack of enforcement of policies and procedures implemented for the "safety" of employees and also knew of the lack of a security guard on the premises. . . . The presence of a security guard on the premises and, to a lesser extent, superior lighting in the area would have deterred Wester from the incident.

> Additionally, it is also my opinion that the lack of adequate enforcement of "passive" security measures, including allowing a minor employee to work past 7:00 p.m. and the enforcement of policies and procedures as well as "active" security measures, namely the employment of a security guard, were causes in fact of the incident.

■ We conclude that a reasonable inference exists that, but for Jack in the Box's failure to provide adequate security and lighting, this incident would have never taken place. Mackey's affidavit presents some evidence that Jack in the Box's conduct was a substantial factor in bringing about the alleged injuries and prevents Jack in the Box from establishing as a matter of law that its conduct was not the cause in fact of the incident.

## FORESEEABILITY

■ The test for foreseeability is whether a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Nixon v. Mr. Property Mgmt.,* 690 S.W.2d 546, 549–50 (Tex.1985). The danger of injury is foreseeable if its "general character . . . might reasonably have been anticipated." *Id.* at 551 (quoting *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (1939). The question of foreseeability asks whether the injury "might reasonably have been contemplated" as a result of the defendant's conduct. *McClure v. Allied Stores of Tex., Inc.,* 608 S.W.2d 901, 903 (Tex.1980). It requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury. *See* RESTATEMENT (SECOND) OF TORTS § 435(2) (1965).

■ The Peerenbooms claim that evidence of previous crimes on or near the premises of Jack in the Box and prior notice of Wester's intention to "mess with a sixteen year old" make the incident a foreseeable result. According to Mackey's affidavit, "the number of reported crimes, both at the restaurant location and in the general area surrounding the restaurant, made this incident foreseeable as well." Considering the summary-judgment evidence of prior crimes at the restaurant address and in the restaurant area, we find that a material fact question exists as to the foreseeability of the alleged incident. According to the Supreme Court, "Evidence of specific previous crimes on or near the premises raises a fact issue on the foreseeability of criminal activity." *Nixon,* 690 S.W.2d at 550.

## CONCLUSION

The Peerenbooms have asserted in the following four points that summary judgment was improper because a genuine issue of material fact exists as to:

1. what JoAnn's status was at the time and place of the alleged incident;

2. whether Jack in the Box's conduct proximately caused their alleged injuries;

3. what Jack in the Box's corresponding duty was toward her at the time and place of the alleged incident; and

4. whether Jack in the Box's conduct constituted gross negligence.

Having found that the evidence conclusively establishes as a matter of law that JoAnn was a trespasser at the time and place of the alleged incident, we overrule points one and three. Concluding that material fact questions exist as to gross negligence and proximate cause, we sustain points two and four.

Because the court was correct in determining JoAnn's status as that of a trespasser, we reform the summary judgment to a partial summary judgment that JoAnn's status was that of a trespasser at the time and place of the incident and that the duty Jack in the Box owed her was to refrain from injuring her willfully, wantonly, or through gross negligence. Having found genuine issues of material fact as to the elements of gross negligence and proximate cause, we reverse and remand for a trial on the merits as to those issues.