

**NUMBER 13-08-00385-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ELIDA LOPEZ OLIVER,** **Appellant,**

**v.**

**LONG ISLAND OWNERS ASSOCIATION, INC.,** **Appellee.**

---

**On appeal from the 357th District Court
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Vela
Memorandum Opinion by Justice Vela**

This is an appeal from a jury verdict in favor of appellee Long Island Owners Association (the association) and against appellant Elida Lopez Oliver (Oliver). On appeal, Oliver raises two issues. First, she urges that the jury's finding that she was not an invitee of Long Island was against the great weight and preponderance of the evidence or was conclusively established as a matter of law in her favor. Second, Oliver urges that the trial

court abused its discretion in refusing to grant her challenges for cause to two venirepersons who stated it would be difficult to award the damages she was seeking. We affirm.

## I. Background

Oliver was a resident of Long Island, an island residential community in Cameron County. She filed suit against the association urging that she was injured as she rode her bicycle on Garcia Street toward the Long Island swing bridge that connects Long Island with the Texas mainland. The bridge is the only means of access to Long Island, other than by boat. According to Oliver, she was riding her bicycle toward the bridge when the mechanical arm located south of the bridge was lowered onto her, knocking her to the street and causing her serious injury. There were no eyewitnesses to the accident. Oliver testified that she told Claudio Hernandez, the gate operator, what had happened. Hernandez testified that Oliver told him that she had run into the gate with her bicycle. There was conflicting testimony offered by both parties regarding Oliver's medical condition. Because of the jury's findings on the liability issues, that testimony is unnecessary to the issues we address, so we will not recount it here. *See* TEX. R. APP. P. 47.1.

A board of directors, selected by the association, is in charge of operating the bridge, maintaining it, and paying expenses for the bridge. The association has owned the bridge since 1989. The road and the bridge are considered private property. The bridge is opened every hour on the hour to boat traffic and, at additional times, when requested by the Coast Guard. Any member of the public may use the bridge. However, Long Island residents pay a $32.00 monthly bridge fee which is used by the board as revenue to

operate the bridge for those landowners.   Margaret Hunnicutt, a board member in 2004 when this accident happened, testified that the monthly bridge fee "would be combined into their condo fee.  They may not even know it, but they do.  I'm not sure."  She was called immediately after the incident made the basis of the suit and suggested that Oliver go the hospital by ambulance.  Hunnicutt agreed that on the date in question Oliver had every right to use the bridge and expect that it had been safely maintained.  She further testified that the bridge was properly maintained.

After a lengthy trial, the jury returned a verdict in favor of the association.  Question number 1 asked the jury to decide if the bridge arm was coming down at the time it came into contact with Elida Oliver.  The jury answered "no" to that question, thereby rejecting Oliver's version of the events.  The only other question the jury decided was question number 4, which inquired:

> On the occasion in question, was Elida Oliver an invitee on that part of Long Island's premises under consideration?
>
> An "invitee" is a person who is on the premises at the express or implied invitation of the possessor of the premises and who has entered thereon either as a member of the public for a purpose for which the premises are held open to the public or for a purpose connected with the business of the possessor that does or may result in their mutual economic benefit.

The jury answered "no " to this question as well.  Because all of the additional questions were predicated upon affirmative answers to questions 1 and 4, the jury did not reach the causation or damage questions.  The trial court entered a take-nothing judgment in favor of the association.  Oliver filed a timely motion for new trial that was overruled by written order.

## II. Evidentiary Standard of Review

Oliver argues by her first issue that she is entitled to a new trial because the jury's finding that she was not an invitee was either contrary to the weight of the evidence or conclusively established in her favor. With respect to legal sufficiency, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 748 (Tex. App.–Corpus Christi 2006, pet. denied). We will not substitute our judgment for that of the fact finder if the evidence falls within the zone of reasonable disagreement. *Keller*, 168 S.W.3d at 822. With respect to factual sufficiency, we must first examine the record to determine if there is some evidence to support the finding; if so, then we must determine whether the failure to find is so contrary to the overwhelming weight of the evidence as to be clearly wrong or manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *Marrs & Smith P'ship v. D. K. Boyd Oil & Gas Co., Inc.*, 223 S.W.3d 1, 14 (Tex. App.–El Paso 2005, pet. denied).

## III. Analysis

### A. Status as an Invitee

The duty a landowner owes to someone injured on the landowner's property depends on the injured party's legal status as an invitee or a licensee. *Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex. 1996); *Peerenboom v. HSP Foods, Inc.,* 910 S.W.2d 156, 161 (Tex. App.–Waco 1995, no writ). A landowner owes an invitee the duty to use ordinary care to protect the invitee from not only risks of which the owner is actually aware, but also from risks of which the owner should be aware after reasonable inspection. *Lopez,* 929

4

S.W.2d at 3. In other words, a landowner must use reasonable care to reduce or eliminate unreasonably dangerous conditions of which he is aware, or reasonably should be, aware. *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex. 1998); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

On the other hand, a landowner owes a licensee a duty not to injure by willful, wanton, or grossly negligent conduct and to protect the licensee from those dangers of which the owner is actually aware. *Payne,* 838 S.W.2d at 237. Thus, a licensee must establish that the landowner actually knew of the dangerous condition, whereas an invitee need only establish that the landowner knew or should have known of the dangerous condition. *Id.*

An invitee usually is defined as someone who enters onto property with the owner's knowledge and for the mutual benefit of both parties. *See Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex. 1975). An invitee has also been defined somewhat more broadly as someone who enters another's property on business or for the benefit of the landowner. *See Cowart v. Meeks,* 111 S.W.2d 1105, 1107 (Tex. 1938). If an individual is on the land for his own convenience or on business for someone other than the owner, then she is a licensee. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 910 (Tex. App.–Houston [14th Dist.] 2009, no pet.); *Weaver v. KFC Mgmt. Inc.*, 750 S.W.2d 24, 26 (Tex. App.–Dallas1988, writ denied).

There was evidence that Oliver was on a leisurely bicycle ride at the time this accident occurred. There is nothing in the record to suggest that she entered the property in question to benefit the association in any way. Because there was no evidence that she

5

entered the property for a purpose connected with the business of the owner, that did or may have resulted in their mutual economic benefit, the jury could have properly determined, as a fact issue, that she was not an invitee. While there was evidence that, as an association member, she paid monthly to use the bridge, there was ample evidence that she was on the bridge for her own purposes and not to benefit the association in any way.

Regardless, we believe that the jury's answer to question number one would bar recovery irrespective of the way the jury answered question number 4. Oliver's theory of the case was that the arm of the swing bridge hit her on top of the head as it was coming down. The jury was asked if the arm was coming down "at the time it came into contact with Elida Oliver." The jury obviously believed that the accident did not happen as Oliver testified. So, even assuming that Oliver was an invitee, she would not be able to recover because the jury did not agree that the arm of the bridge was moving when the accident occurred. If the alleged defect that Oliver attempted to establish was that the bridge arm came down too quickly or that the warnings were inadequate, any alleged defect would not have caused the injury in question because the jury did not believe the accident happened as Oliver testified. We overrule issue one.

## B. Peremptory Challenges

By her second issue, Oliver argues that the trial court abused its discretion by refusing to grant her challenges for cause regarding two of the venirepersons. As a result, Oliver claims she was forced to use her peremptory challenge on those individuals and thus had to accept otherwise objectionable jurors.

6

A trial court's refusal to strike a prospective juror for cause is reviewed under an abuse of discretion standard. *Cortez v. HCCI- San Antonio, Inc.*, 159 S.W.3d 87, 93 (Tex. 2005). To disqualify a potential juror, it must appear that the state of mind of the juror led to the natural inference that he or she will not act with impartiality. *Id.* at 94. A person is disqualified from serving on a jury if the person has a bias or prejudice in favor of or against a party or claim, or if the person is unable or unwilling to follow the trial court's instructions. *See* TEX. GOV'T CODE ANN. § 62.105(4) (Vernon 2005); TEX. R. CIV. P. 226a. Such bias, prejudice, or inability to follow the court's instructions may not be discernible from a single statement or response to a general question. *Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008).

Statements of partiality may be the result of inappropriate leading questions, confusion, misunderstanding or ignorance of the law, and do not necessarily establish disqualification. *Id*.; *Cortez,* 159 S.W.3d at 92. When a venire person expresses bias or confusion, the trial court has the discretion to stop the line of questioning to clarify that person's response. *Murff,* 249 S.W.3d at 411. Because trial judges are present in the courtroom and are in the best position to evaluate the sincerity and attitude of individual panel members, they are given wide latitude in both conducting voir dire proceedings and determining whether a panel member is impermissibly partial. *Id.* An appellate court must consider the entire examination in reviewing whether a trial court abused its discretion in deciding that a juror was disqualified. *Id.*

Specifically, Oliver argued that prospective juror number 1, Ms. Street, and prospective juror number 22, Mr. Piercy, were objectionable. During voir dire, counsel for

Oliver asked the jury if there was anyone on the panel who couldn't award ten million dollars, "even if you prove it to me, even if there is an injury, I cannot award that much money." Twenty-four of the prospective jurors, including Street and Piercy, answered affirmatively.

On individual examination, Street stated that she felt ten million dollars was extremely high and she thought a party would have to be "bedridden to get pretty much that much." She further told the court that if "the preponderance was there, I could award, but I don't know about that much." Street agreed, however, if the medical bills were in the millions, she would be able to follow the law and award those damages. She said that she would follow the law as long as the evidence supported the amounts claimed. Finally, the court informed Street that she might not actually see medical bills of ten million dollars, but the severity of the damages are the premise for the damages that they were seeking as being reasonable damages. Street agreed that she could award damages under those circumstances.

When Piercy was individually questioned, he ultimately confirmed that he would follow the law and award damages according to the evidence. Piercy initially said it would be improbable for him to make such award. The trial court asked him whether, if the evidence supported a ten-million-dollar amount, he would be able to award it. He responded, "If it supported it, yes, and it would have to support it in my mind."

The trial court had wide latitude in regard to these challenges. *See id.* What may have seemed like bias regarding initial statements by these two individuals was clarified by their individual examination to the trial court's satisfaction. A juror's willingness to try to make its decision based upon the evidence and the law is "all we can ask of any juror."

8

*Cortez*, 159 S.W.3d at 93.  We find no abuse of discretion in the trial court's ruling.  We overrule issue two.

## IV. CONCLUSION

We affirm the judgment of the trial court.


ROSE VELA
Justice


Memorandum Opinion delivered and
filed this 11th day of June, 2009.