

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00278-CV

**CITY OF ROBINSON, A MUNICIPAL CORPORATION,**
                                                    **Appellant**
**v.**

**ALTON JAY LEUSCHNER AND NINA JUNE LEUSCHNER,**
                                                    **Appellees**

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2018-1063-4**

# OPINION

The City of Robinson (the City) brings this interlocutory appeal challenging the

trial court's denial of the City's plea to the jurisdiction. We will reverse.

## Factual and Procedural Background

Alton and Nina Leuschner (the Leuschners) have owned and resided in a home

located in Robinson, Texas, since 1987. In January 2000, the City completed the

construction of a sewer lift station located near the Leuschners' home as part of a sewer

system reroute of the South Pond sewer treatment plant. Once the lift station was brought into service, the Leuschners noticed a foul sewer odor in and around their home. According to the Leuschners, the sewer odor varies but has been continuous since the lift station was put into service. The Leuschners complained to the City early on about the odors and ultimately filed a lawsuit against the City in March 2018. The City filed a plea to the jurisdiction alleging that the Leuschners had failed to invoke the trial court's jurisdiction on their nuisance, constitutional takings, and tort claims. In the Leuschners' live pleading at the time of the hearing on the City's plea to the jurisdiction, their second amended original petition filed June 28, 2019,[1] the Leuschners assert the following specific claims for relief: (1) that the Leuschners' property had been taken under article one, section seventeen of the Texas Constitution resulting in damages; (2) that the sewer odor constituted a permanent nuisance and nuisance per se resulting in damages; (3) that the Leuschners were entitled to recover exemplary damages due to the City's "fraudulent negligence and/or gross negligence"; (4) that the trial court enter an injunction against the City requiring that the odor be remedied and that the City cease the infringing activity; and (5) that the City be estopped from asserting the defense of limitations because the Leuschners relied on the City's representations and that the limitations period began running anew because the City acknowledged the justness of the Leuschners' claims. The

---

[1] The clerk's record before us reflects that the Leuschners filed a second amended original petition on June 25, 2019, and a second amended original petition on June 28, 2019.

Leuschners' brief states that they are not bringing claims against the City under the Texas Tort Claims Act and that their allegations of fraud, negligence, and promissory estoppel are asserted as a basis for tolling limitations.

## Applicable Law

PLEA TO THE JURISDICTION

We have jurisdiction to review an interlocutory order of a trial court granting or denying a plea to the jurisdiction by a governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8). We review the trial court's ruling on a plea to the jurisdiction under a *de novo* standard. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

A plea to the jurisdiction is a dilatory plea, filed to defeat a cause of action without regard to whether the claims asserted have merit. *Wheelabrator Air Pollution Control, Inc. v. City of San Antonio*, 489 S.W.3d 448, 453 (Tex. 2016). "The purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

A trial court's jurisdiction is challenged by a plea to the jurisdiction based on sovereign immunity. *Miranda*, 133 S.W.3d at 225–26. "Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions

of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011). A waiver of immunity must be made by clear and unambiguous language. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994). Without a waiver, courts have no jurisdiction to adjudicate any claim against a municipality. *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014) (citing *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006)).

A plea to the jurisdiction can challenge whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, or it can also challenge the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). A plaintiff in a suit against a governmental unit "must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). The plaintiff bears the burden of alleging facts that affirmatively demonstrate that the trial court has subject matter jurisdiction over a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Where a plea to the jurisdiction challenges the existence of jurisdictional facts, the court can consider evidence as necessary to resolve any dispute over those facts. *Garcia*, 372 S.W.3d at 635. The evidence considered by the court may implicate both the subject matter jurisdiction of the court and the merits of the case. *Id.*

> If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. However, if the relevant evidence

is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.

> We acknowledge that this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).

*Miranda*, 133 S.W.3d at 227–28.

INVERSE CONDEMNATION AND TAKINGS

The Texas Constitution waives governmental immunity with respect to inverse-condemnation claims. *Carlson*, 451 S.W.3d at 830 (citing *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011)). An inverse-condemnation claim is based upon a viable allegation of a taking. *Id.* (citing *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012)). A taking is defined as the acquisition, damage, or destruction of property via physical means. *Id.* at 831. A properly pled inverse-condemnation claim must allege an *intentional* government act that resulted in the uncompensated taking of private property. *Id.* (citing *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 647 (Tex. 1971)).

"[T]he government's 'mere negligence which eventually contributes to the destruction of property is not a taking'; rather, the government must act intentionally." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 820 (Tex. 2009) (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 504–05 (Tex. 1997)). The requirement that the government act intentionally "is rooted in the constitutional provision that a compensable taking occurs 'only if property is damaged or appropriated for or applied to public use.'" *Id.* "When damage is merely the accidental result of the government's act, there is no public benefit

and the property cannot be said to be taken or damaged for public use." *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex. 2004) (internal quotations and emphasis omitted). The limitation that the taking be for public use "is the factor which distinguishes a negligence action from one under the constitution for destruction." *Pollock*, 284 S.W.3d at 820–21 (internal quotations omitted).

> For purposes of article I, section 17, a governmental entity acts intentionally if it knows either "that a specific act [was] causing identifiable harm" or "that the specific property damage [was] substantially certain to result from" the act. A governmental entity is substantially certain that its actions will damage property only when the damage is "necessarily an incident to, or necessarily a consequential result of the [entity's] action." The government's knowledge must be determined as of the time it acted, not with benefit of hindsight.

*Id.* at 821 (footnotes and citations omitted); *see Jennings*, 142 S.W.3d at 314.

### Jurisdictional Pleadings and Facts Presented

Paragraph eleven of the Leuschners' June 28, 2019 second amended original petition alleges the constitutional taking by the City as follows:

> The Defendant knew the Plaintiffs' home would be damaged and that the Defendant was substantially certain that rerouting the sewer line would eliminate odors. The damages to Plaintiffs' property rose to the level of a constitutional taking under Texas Constitution Article 1, §17. Plaintiffs' property had been taken and damaged for public use without compensation being paid. The Defendant physically damaged Plaintiffs' property in order to confer a public benefit, and the City is liable under the constitution. The City knew that the specific property damage was substantially certain to result from the government action, and the damage is necessarily an incident or necessarily a consequence as a result of a government action. The act of the Defendant was one in which the damage was so obvious that the consequence amounts to deliberate infliction of harm for the purpose of carrying out the government project. Defendant

intentionally causing damage includes knowledge that the damages were substantially certain to result from the conduct, for the Defendant knew an invasion of Plaintiffs' use and enjoyment of land was substantially certain to result from the City's conduct and the invasion was intentional.

The City's plea to the jurisdiction presented evidence to support the argument that the City's act was not intentional, in the context of a constitutional takings claim, which included affidavits, discovery responses, city business records, deposition testimony, letters, and an email. The City presented an affidavit from Bob Wallace, who was City Engineer and Project Manager for the planning and construction of the lift station. Wallace stated that the plans and specifications for the system and lift station met or exceeded the professional standards and practices at the time for the project. Wallace's affidavit included the following, in relevant part:

> Prior to the installation and initial operation of the Moonlight Drive Lift Station, I can state from personal knowledge there was no notice, indication, or knowledge that the system or the Moonlight Drive Lift Station would cause excessive odors or otherwise adversely affect nearby properties. It was anticipated at the time of the installation of the system and the Moonlight Drive Lift Station that the system and lift station would function without causing excessive odors or adversely affecting nearby properties. There was no indication in the plans or specifications for the system that the system or the Moonlight Drive Lift Station would cause excessive odors or otherwise adversely affect nearby properties.

> If, prior to the construction or operation of the Moonlight Drive Lift Station, I had knowledge or if I believed that the system or the lift station would cause excessive odors or otherwise adversely affect nearby properties, I would have disclosed that to the City of Robinson. As the City Engineer and the President of the Wallace Group, Inc. and Project Manager for the project, if there had been any indication or notice to the City or knowledge by City staff or elected officials prior to the construction or operation of the Moonlight Drive Lift Station that the system or lift station

would cause excessive odors or otherwise adversely affect nearby properties, I would have been aware of it. I am not aware of any such knowledge or notice to the City of Robinson or knowledge by City staff or elected officials prior to the construction or operation of the Moonlight Drive Lift Station that the system or lift station would cause excessive odors or otherwise adversely affect nearby properties.

In addition, the City presented the affidavit of Dale Pattillo, the City's former public works director, who worked for the City during the planning and construction of the lift station and sewer system reroute. In his affidavit, he states that he consulted with Bob Wallace regarding Wallace's plans for the proposed alternatives to issues with the South Pond sewage treatment plant. Pattillo added that he was present at the city council meetings when Wallace's plans were discussed and approved. Pattillo stated that while the lift station was under construction, he was often onsite, and once the construction was complete, and it was turned over to the City, he was responsible for operation of the lift station. Pattillo states that if there had been any indication or notice to the City, its staff, or officials prior to the construction or operation of the lift station that it would cause offensive odors or adversely affect nearby properties, he would have been aware of it because of his position with the City. Pattillo adds: "Prior to the installation and initial operation of the [lift station], I can state from personal knowledge there was no notice, indication, or knowledge by the City that the [lift station] would cause offensive odors or otherwise adversely affect nearby properties." Only after the lift station was put into operation, Pattillo states, did the City become aware of any issues or complaints

regarding offensive odors. Pattillo concludes that the City has made numerous attempts to fix any odors emanating from the lift station.

The City also presented the affidavit of Greg Hobbs, the former water distributions superintendent who served as such during the planning and installation of the lift station. Hobbs details that he consulted with Wallace regarding design of the lift station, was present onsite during the lift-station construction, and was present onsite often in the years following construction of the lift station. Hobbs reinforces that issues concerning, or complaints about, offensive odors near the lift station began immediately after the lift station went into operation and that there was no notice, indication, or knowledge that the lift station would cause offensive odors or adversely affect nearby properties. Furthermore, Hobbs provides that it was anticipated that the lift station would function without causing offensive odors or adversely affecting nearby properties at the time it was installed.

The Leuschners objected to portions of the affidavits of Robinson City Manager Craig Lemin and Robinson Utilities System Director Greg Hobbs that were exhibits to the City's plea to the jurisdiction. The Leuschners objected to Craig Lemin's affidavit, complaining that it fails to establish personal knowledge, fails to affirmatively state that the facts are true and correct, and includes conclusory statements. The Leuschners' objections to Greg Hobbs's affidavit complain that it fails to affirmatively state that the facts are true and correct.

Defects in the form of affidavits are not grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. *See* TEX. R. CIV. P. 166a(f). "Among the objections that may be raised at trial regarding the form of an affidavit are: (1) lack of personal knowledge; (2) hearsay; (3) statement of an interested witness that is not clear, positive, direct, or free from contradiction; and (4) competence." *Rockwall Commons Assocs., Ltd. v. MRC Mortg. Grantor Tr. I*, 331 S.W.3d 500, 507 (Tex. App.—El Paso 2010, no pet.) (citing *Stewart v. Sanmina Tex. L.P.*, 156 S.W.3d 198, 207 (Tex. App.—Dallas 2005, no pet.)). Even if an affidavit is properly objected to, it will remain part of the evidence unless there is a written, signed order sustaining the objection. *See Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 160 (Tex. App.—Waco 1995, no writ). However, if the defect is one of substance, the defect cannot be waived by failure to object or obtain a written order. *Id.* Substantive defects include affidavits that contain legal or factual conclusions. *Stewart*, 156 S.W.3d at 207. Conclusory statements do not provide the underlying facts to support the conclusion. *Weech v. Baptist Health Sys.*, 392 S.W.3d 821, 826 (Tex. App.—San Antonio, 2012, no pet.). Affidavits containing conclusory statements are not proper proof if there are no facts to support the conclusions. *Id.* Factual conclusions, opinions, and subjective beliefs unsupported by evidence are defects in substance and may be raised for the first time on appeal. *Id; see Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003, no pet.). Thus, "there is no need to object to the erroneous introduction of incompetent evidence

either to preserve the error in its admission or to ensure it is not treated as some evidence." *Mathis v. Bocell*, 982 S.W.2d 52, 60 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (internal quotations omitted). An objection to substance can be raised for the first time on appeal. *Peerenboom*, 910 S.W.2d at 160. We must first determine the type of defect, if any, contained in the affidavit before conducting our analysis.

We will address jointly the Leuschners' objections that Hobbs's and Lemin's affidavits are deficient because they do not recite that the facts stated therein are true and correct. An affidavit that does not affirmatively state that the facts contained therein are true and correct is a form defect that can be waived. *See Watts v. Hermann Hosp.*, 962 S.W.2d 102, 105–06 (Tex. App.—Houston [1st Dist.] 1997, no pet.). The record before us reflects that the Leuschners did not obtain a ruling on their objections to Hobbs's and Lemin's affidavits and did not have the trial court enter a written, signed order sustaining the objections. *See Peerenboom*, 910 S.W.2d at 160. Because the objection was waived, and it was the Leuschners' sole objection to Hobbs's affidavit, the affidavit will remain part of the evidence.

We will now consider the Leuschners' remaining objections to Craig Lemin's affidavit that alleges lack of personal knowledge and improper conclusory statements. Lemin's affidavit provides: "Based on the City Council minutes, the plans, and the contract documents I have reviewed, the City relied on these professionals to design and implement the construction of the Moonlight Drive Lift Station." This specific language

in Lemin's affidavit was objected to by the Leuschners. Lemin's affidavit states that he has knowledge of the facts stated therein, "either through personal knowledge or based on the records of the City of Robinson." The specific provision objected to is Lemin's assertions based on his review of City Council minutes, plans, and contract documents. The records reviewed by Lemin were not clearly identified or proven up as business records. We therefore conclude that the portions of Lemin's affidavit that consisted of conclusions based only upon hearsay do not constitute competent evidence because they are substantively defective. *See McCrary v. City of Odessa*, 482 S.W.2d 151, 152 (Tex. 1972).

The Leuschners' general objection to Limen's lack of personal knowledge is an objection to form and was waived by not obtaining a ruling. *See Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.2d 944, 945 (Tex. 1990) (per curiam).

**Analysis**

The Leuschners concede that the underlying facts of the case are largely undisputed. We will only address the claims that are subject to dismissal under the City's plea to the jurisdiction.[2]

As stated earlier our review of the City's plea to the jurisdiction mirrors that of a traditional summary judgment motion. *See Miranda*, 133 S.W.3d at 228, *see also* TEX. R. CIV. P. 166a(c). Initially, the City must carry the burden to meet the summary judgment

---

[2] Because we lack jurisdiction, the trial court's denial of the City's no-evidence and traditional motions for summary judgment will not be reviewed. *See City of Robinson v. Leuschner*, No. 10-19-00278-CV (Tex. App.—Waco Oct. 16, 2019, order); *see also* TEX. R. APP. P. 47.1, 47.4.

proof standard for its allegation that the trial court lacks jurisdiction. *See Garcia*, 372 S.W.3d at 635. Here, the City presented evidence that the offensive odors occurred only after the lift station began operations and that the design, planning, and construction of the lift station did not contemplate offensive odors. The evidence reveals the City did not have notice or knowledge that the system would cause offensive odors prior to the construction or operation of the lift station. For the City's acts to be considered intentional, it must know either "that a specific act [was] causing identifiable harm" or "that the specific property damage [was] substantially certain to result from" the act. *See Pollock*, 284 S.W.3d at 821. The City is considered to be "substantially certain" that its acts will damage property only when the damage is "necessarily an incident to, or necessarily a consequential result of the [entity's] action." *See id.* Furthermore, the City's knowledge must be determined as of the time it acted, not with benefit of hindsight. *See id.*

We conclude the City met its burden of proof, thus requiring the Leuschners to show that a disputed material fact exists regarding the jurisdictional issue. *See Garcia*, 372 S.W.3d at 635. The Leuschners have not produced facts or evidence that the City, at the time the City took action planning, constructing, or initiating operation of the lift station, knew the station would cause identifiable harm by the production of offensive odors and any resulting damages. Additionally, the Leuschners have not produced facts or evidence that the City, at the time the City took action planning, constructing, and initiating operation of the station, knew the specific property damage was substantially

certain to result from its actions. In fact, all the evidence is to the contrary. Once the offensive odors occurred, the City attempted to remedy the odor problem by adding chemicals into the well at the lift station and purchased equipment designed to alleviate the odors at the lift station. Lemin testified in his deposition that the odor is caused by the distance and time raw sewage remains in the sewer line between another lift station and the lift station adjacent to the Leuschners' home.

Mr. Leuschner, in his deposition testimony, stated he spoke with some of the workers who installed the lift station and was told the equipment was state-of-the-art and that they would never smell anything. Mr. Leuschner conceded in his deposition testimony that he did not have any evidence that the City was substantially certain that the sewer lift station and sewer system were going to produce an odor or that the City knew the lift station would cause the odor before it was constructed and in operation. Mr. Leuschner's post-deposition affidavit was presented with his response to the City's plea to the jurisdiction in which he asserted that during his deposition he did not know the precise legal meaning of the term "evidence." The affidavit was unchallenged by the City.

Because the Leuschners have failed to raise a fact question on the jurisdictional issue of intent, we conclude, as a matter of law, that they have failed to present evidence that creates a genuine issue of material fact that the City's acts were intentional thereby failing to invoke the trial court's jurisdiction over the Leuschners' constitutional takings

claim.  Furthermore, because the Leuschners have not asserted any other grounds for waiver of immunity, we conclude that the City is immune from the plaintiffs' nuisance and nuisance per se claims.

The order of the trial court denying the plea to the jurisdiction is reversed and the Leuschners' nuisance claim, nuisance per se claim, and constitutional takings claim are dismissed with prejudice.


MATT JOHNSON
Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Rose[3]
    (Chief Justice Gray dissenting)
Reversed and rendered
Opinion delivered and filed October 6, 2021
[CV06]



---

[3] The Honorable Jeff Rose, Former Chief Justice of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court.  *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.